CITY OF LEAVENWORTH V. D. P. STILLE.

LIABILITY OF CITY; *Contract for Grading Streets; Special Taxes.* In 1866 D. P. Stille under a contract with the City of Leavenworth graded a certain street. Afterward the city levied a special tax on certain real estate belonging to Stille's wife, and occupied by himself and wife as a homestead, and on other real estate abutting on said street, to pay for said grading, but did not provide any means for collecting said tax. Stille then commenced an action against the city to recover compensation for said grading: *Held,* that Stille had a right to insist that the tax levied on his wife's property as well as on the other property, should be collected and paid to him, and therefore, that as the city failed to provide any means for collecting said tax, said action may be maintained, as well for the grading done in front of his wife's property as for that done in front of other property.

*Error from Leavenworth District Court.*

ACTION commenced by *Stille* in March, 1869, to recover from *The City* $20,229.35, with 7 per cent. interest thereon from the 23d of May, 1866. In December 1865 *Stille* agreed with the city to grade Fifth street from Spruce street to Thornton street in a certain specified manner, under the superintendence and control of the city engineer. By the same contract the city agreed to pay him 43 cents per cubic yard for the grading, and to levy a special tax therefor upon the adjoining lots and parcels of ground, as the work progressed. And it was in and by said contract further agreed that *Stille* should look exclusively to such special tax for his pay, if the city levied a legal tax therefor. The grading was done and accepted, and the acceptance confirmed. Certificates were issued to *Stille* for such grading, from time to time, as the work progressed; and the city, by ordinance passed September 4th 1866, levied a special tax on certain lots and pieces of ground to pay said sum of $20,229.35, that sum having been ascertained as the cost under the contract, of the work done, and on the 2d of November 1866, the city treasurer sold the lots or parcels of land against which such certificates were issued, and said special taxes remained unpaid

—said sale being made under the supposed authority of "Ordinance No. 90," passed June 24th 1863, which was the only ordinance by which the city pretended to authorize a sale of lots and lands for such unpaid special taxes. (This Ordinance No. 90, so far as it pretended to authorize such sale, was held void in *Paine v. Spratley,* 5 Kas., 525; *City of Leavenworth v. Laing,* 6 Kas., 274, and *City of Leavenworth v. Mills,* 6 Kas., 288.) To plaintiff's petition *The City* answered, setting up several defenses, of which those material here are as follows: first, plaintiff performed a part of the work, but did not perform all of said work; second, that plaintiff had assigned and transferred to A. A. Higginbotham all the certificates issued to him for such grading, except those issued against his own and his wife's property, and as to such assigned certificates plaintiff was not the real party in interest; third, that for the distance of more than half a mile along the west side of said Fifth street plaintiff had graded the abutting lots, to the width of thirty feet, leaving an equal width of said street along the east side thereof ungraded; fourth, that plaintiff had fraudulently procured a much larger estimate of work completed than he had performed, and for such excess had fraudulently procured certificates to be issued to him, which certificates were void. Another of the defenses set up in the answer is as follows:

"And for a further defense the defendant states, that at the time of the grading of said Fifth street mentioned in said petition, and for a long time prior thereto, the plaintiff, and his wife Elizabeth M. Stille, were the owners and resided upon lots 13, 14, 15 and 16 of Clark's addition of out-lots, containing together twenty acres more or less, said lots fronting on said Fifth street, and the east half of them being liable for the special tax for grading said Fifth street; that said property was prior to said grading aforesaid of but little value except as farming land, as it was unaccessible from the business portion of the city except by way of Fifth avenue and rear of Seigle Garden so-called, some two miles or more in a roundabout way; that the said plaintiff, by petition and false representations to the city council, and against the protest of a large majority of the property-owners who were liable of

being taxed for the grading of said Fifth street from Spruce street to Thornton street induced the city council to order the grading of said Fifth street as last aforesaid, a distance of three-fourths of a mile beyond where there were any persons residing on or near said Fifth street, except one or two families beside this plaintiff, and where more than four-fifths of the grading and filling on said street was done, and whereby this defendant was obliged to expend large sums of money in the building of bridges and the construction of sewers to accommodate said plaintiff. And defendant further says, that while the legal title of a portion of said above-mentioned lots 14, 15 and 16 was, at the time the plaintiff performed the work above described, and for which this suit is brought, in said Elizabeth M. Stille, wife of the plaintiff, yet in truth and in fact the lots above mentioned were the property of the plaintiff, and bought with his money."

"And for a further defense, defendant says that the said plaintiff as said contractor received and accepted the certificates issued for doing all of said work, including those issued to him against the lots and tracts of land above mentioned in Clark's out-lots owned by himself, and also those owned by his wife Elizabeth M. Stille, for whom he acted as agent, in full and complete satisfaction for the work done by him as aforesaid in grading said Fifth street from Spruce street to Thornton street."

A demurrer was interposed by plaintiff to these two defenses, and the demurrer was sustained. The action was tried at the November Term 1869, of the district court. The district judge gave his opinion in writing. The following are the material parts of such opinion:

"The conclusions I have reached in this case are, that the court must dispose of the case under an instruction to the jury to find a special verdict. * * * Really, there is but one new point in this case. All the other points raised, as far as I recollect, have been raised in other cases of a similar nature, and determined uniformly by this court in a certain way. This new question is as to the liability of the city to the contractor where the tax is legal. In this case, according to the uniform ruling of this court, the evidence shows that the city did not levy a legal tax.

"The evidence shows that an ordinance was passed declaring the improvements of Fifth street to be necessary, and

ordering the work to be done; that the city engineer totally failed to do his duty as prescribed by the ordinance in such case. The ordinance says he shall forthwith after the passage of any ordinance declaring it necessary for the work to be done, make a plat of the street to be improved, together with the adjacent property liable to be taxed, and he shall prepare plans and specifications for doing the same. The ordinance contemplated that this shall be done before the city advertises for bids. The evidence shows that the engineer wholly failed to comply with the ordinance. Indeed, he made no effort to discharge that duty; and so far as there have been cases before me, the evidence invariably shows that the city engineer has paid no attention to the ordinances requiring him to do that. So it seems to me, if the city keeps an engineer in its employ who, as I might say, willfully disregards his express duty, the city ought to be held responsible for willful negligence in keeping such an officer in its employ. * * * It is one of the principal objects in having a plat and plans, and specifications prepared and on file in the engineer's office, that bidders may bid intelligently, so they may know what amount of earth is to be excavated. Prices for work vary very much according to circumstances, and a person could not probably bid in the work unless he had some knowledge before him. This requirement is for the interest of the property-owners and their benefit, and the court ought to see that that duty is performed.

"The charter contemplates that the clerk shall not advertise for bids until those plans and specifications are prepared. Yet the city clerk advertises the next morning in the newspapers, that bids will be received until a certain day. And he does that without taking the trouble to find out whether there are plans or specifications on file or not. In all cases the advertisement says the work is to be done in accordance with plans and specifications on file in the engineer's office, when the city clerk could have found out by stepping in the next door, that there were no such plans and specifications on file. It seems to me if I would be governed by the invariable rule, and the principles followed by courts in determining the validity of tax titles and taxes, the departure from the prescribed mode would be sufficient to invalidate the tax. It is not form without substance; it has in it something of substance. * * *

"The city may levy this tax in either of three ways: it

may levy it on the property, according to its value without regard to improvements; or according to its value generally, taking into consideration its condition, improved or otherwise; or, it may levy it on the property according to its area. I think there can be no question but two of these modes are constitutional. * * *

"Here the power to improve streets is conferred on the city council. The particular mode in which that power shall be exercised is not prescribed or regulated by the statute, but is left to the city authorities. Then there is a provision in our city charter, in substance, that in no event shall the city be liable for any work or improvements done under the provisions of this act, but that the contractor shall look exclusively to the special tax for pay, provided the city shall levy a legal tax. What is a reasonable interpretation of this clause? What is the evident meaning of the language of that proviso? It seems to me it is equivalent to saying if the city levies a legal tax, the contractor shall look to it for his pay; if they do not, the city shall be liable.

"Counsel have admitted to the court that they have failed to sustain the various charges of fraud and collusion alleged against the plaintiff. It seems to me it cannot be held that the taking of these tax warrants or certificates of sale amount to a satisfaction of his claim against the city, for the reason that these certificates are void. The proof shows that the plaintiff was not and is not the owner of the lots described in those certificates to which I have alluded, and in which the assessments undertaken to be levied have not been paid. So the evidence fails to show he sustained any such relation to the property that he was under any obligation to pay it. The proof shows the property belonged either to Levi Clark, or plaintiff's wife; and in either case he would have the right to recover. The mere fact that the property belonged to his wife would not prevent his recovering from the city. I shall therefore instruct the jury to find for the plaintiff, and assess his damages at thirty-three hundred dollars."

The jury, in accordance with said instructions, returned a verdict in favor of *Stille* for $3,300. New trial refused. Judgment on the verdict, and *The City* brings the case here on error.

*H. Miles Moore*, and *E. Stillings*, for plaintiff in error:

1. Stille in his petition alleges against the city as grounds for a recovery, that the city failed to have plats made, and appraisement, etc., and to levy a legal tax. There was no allegation in the petition of any failure to make sale. The tax was levied in the language of the law, so that if the facts alleged why the tax was not legal, fail to show such to be the case, we suppose the petition did not even state a cause of action. As we understand the case made by the petition, the reasons there given why plaintiff should recover have all been decided in the case of *City of Leavenworth v. Mills*, 6 Kas., 288, and that according to that decision the tax in this case was a legal tax. The further question decided in that case, as to whether the city ordinance authorized the sale, has not been made in this case. If the petition did not state facts sufficient to constitute a cause of action, of course the several demurrers to the answer should have been overruled.

2. Stille had sold all the tax warrants except those affecting his own or his wife's property. The evidence shows that he was in possession of the property, claiming it as his own, and that he took this contract for the purpose of enabling himself to pay the taxes on this property, by doing the work himself; and after thus presenting himself before the city council, as the owner of this property, and getting the contract, and collecting or selling, and having collected by others, the taxes on all other property, except that of which he was possessed, he sued the city to collect this tax, and court instructed the jury to find for the plaintiff.

We submit that it was the duty of Stille to pay the taxes, and that any purchase by him of the land was in fact a payment. If this be true, the question should have gone to the jury, whether the transaction of striking this property off to Stille (at the city treasurer's tax sale for said special taxes,) was not in fact a payment. If it was incumbent on him to pay as well as receive the amount, the debt was of course satisfied when made. That it was his duty to pay those

taxes, we refer to 16 Mich., 366; 36 Cal., 136, 322; 22 Wis., 175; 10 Ohio, 152; 12 Ill., 442; 23 Maine, 46; 7 Minn., 432. And in such a case a purchase by him would be simply void, even if it had been admitted to be his wife's property; but this was a question on which there was evidence both ways, and one which it was proper that a jury should decide.

3. The instructions of the court to the jury show clearly the grounds of its decision, and with the exceptions of two tax warrants, and the mixed question of possession and ownership of the land on which this tax had been levied, present the questions in the case as they arose on the evidence. The decision so made, and the reasons for it, we understand to be overruled in the case of *Mills*, above referred to.

The case itself presents to the court one of the extreme cases of human depravity, which it so often becomes the duty of courts and lawyers to witness. Stille had urged the city to do this work, and after receiving the benefit of it in the greatly enhanced value of his property, and after directly and indirectly collecting $18,000 off the parties who resisted the doing of this work because it was a burden and no benefit to them, he brings this suit to recover of the city his share of the tax, and thereby compel those, of whom he has already collected, to contribute to pay his share of this improvement made for his particular benefit, more than that of any other person.

*Clough & Wheat,* for defendant in error:

1. We claim that Stille was, as matter of law, entitled to the verdict returned; not only to that verdict, but to one much larger in amount.

If the assessment of special taxes to pay for the grading of Fifth street is illegal, the judgment in favor of Stille against the city should be affirmed, it being immaterial whether the right to such judgment is founded on the contract to pay, or by force of the proviso in § 11, page 129, Laws of 1864, the work having been done, and no legal tax levied with provi-

35 —13 KAS.

sion to collect the same; or, as a matter entirely independent of the contract, because Stille did work for the city which it accepted, and by its ordinance admitted the value of. 1 Met., (Ky.) 339; 38 Ill., 266; 5 B. Mon., 199; 31 N. J., 143; 3 Hurl & Norman, 572; 40 N. Y., 372; 11 Paige, 596; 2 Keys, 132, 136; 9 Iowa, 239; 44 Mo., 482.

We suppose that it is not material to inquire whether Stille's right of action for any of the tax levied was transferred to A. A. Higginbotham by the contract between him and Stille, because the tax apportioned against the lots 13, 14, 15 and 16, in Clark's Addition of out-lots, and lots 11, 12, 13, 14, 15 and 16, in Henry's Addition, (mentioned in and excepted from the last-mentioned contract,) as required by §5, page 127, Laws 1864, as shown by the city engineer's estimate, amounted to the sum of $4,003.54, which, less such sum if any, as should be deducted therefrom, would amount to more than the sum of said verdict as rendered.

It was the general duty of the city and its officers to determine where Fifth street was located. And under the contract, as well as by the requirements of law, it was the duty of the city and its officers to determine when and how, and in what manner, it would have Fifth street graded. Stille did the work under the directions of the officers of the city, where the city and its officers claimed the street was. And the city having induced him to spend his time, labor and money in grading the street where it directed him to, could not afterward be heard to say he did not do his grading in the street. *City of Leavenworth v. Laing,* 6 Kas., 274; *Sleeper v. Bullen,* 6 Kas., 300; 4 Wal., 189; 1 Met., (Ky.) 339.

2. If it shall be claimed that Stille had not performed the conditions and requirements of the contract on his part, then we refer to §10, page 129, Laws 1864, from which we see that the engineer's acceptances aforesaid, and the confirmations thereof by the city council, were final and conclusive evidence that the (work) improvement was done by Stille in accordance with the terms of the contract; and that because of the acceptances and confirmation no court could in any case inquire

into the question whether the improvement so accepted was done in accordance with the terms of the contract or not. 29 N. Y., 106; 15 Ind., 419, 423; 39 Mo., 53; 2 Dutcher, 49; 21 Howard, 539.

3. Of course, if Stille was as a matter of law entitled to a verdict for as much as $3,300, it is entirely immaterial what defenses if any existed against the whole or any part of the remainder of the claim by him set forth in his petition. Of course, it was competent for Elizabeth, the wife of Stille, to own lots. And Stille did not pretend to do, and could not himself do any act which would prejudice her in any matter connected with the special tax, any more than though she had not been his wife; § 17, p. 699, Comp. Laws; *Moore v. Wade,* 8 Kas., 380; *Going v. Orns,* 8 Kas., 85; 6 Ind., 292; 38 Ill., 492. The city agreed with Stille to levy a legal tax, and provide means for enforcing and collecting the same, against all the lots and pieces of ground within the proper distance, (each tract its proper share;) and it was not material to the effect of that contract whether his wife owned a portion of the same or not.

4. The pretended sale-certificates were void. Among other reasons, because the city had not, after the passage of the act of 1864, authorized a sale of the lots; and such certificates of sale being void, it was not, even as to such of the lots as had been illegally sold, necessary to have produced the sale-certificates. 6 Kas., 274; 44 Mo., 482.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by D. P. Stille against the city of Leavenworth, for services rendered by him in grading a certain street. The contract was made, and work done, under chapter 69 of the laws of 1869, page 124, §§ 3 to 11. Nearly every substantial question involved in this case has been decided by this court in the case of *Leavenworth City v. Mills,* 6 Kas., 288. Indeed, every substantial question except one has been decided either in that case, and in the cases of *Leavenworth City v. Laing,* 6 Kas.,

274, and *Sleeper v. Bullen,* 6 Kas., 300. That question is, whether Stille can recover for grading done by him in front of his wife's property, occupied by himself and wife as a homestead. This is the only question we shall discuss. And indeed it would seem that this question should need but little or no discussion; for in this state husband and wife have the power and the right to own property separate from and independent of each other, and each may contract and be contracted with, sue and be sued, with reference to his or her separate property in the same manner, to the same extent, and with like effect, as though they were not married, except that they must join in the conveyance of their real estate whether held separately or jointly. It is true, the husband has some interests in his wife's real estate which they occupy as a homestead, and that no other person has any such interest; but such interest is merely a right of occupancy, with a restriction upon the wife's power to alienate the property. It is no estate. The whole estate is vested in the wife; and at her death it descends to her heirs, or if alienated before death, the consideration therefor belongs to her. (See *Jenness v. Cutler,* 12 Kas., 515, et seq.) Therefore everything that benefits such real estate is really a benefit to the wife, and all taxes that may be levied thereon are really taxes against the wife. And as the husband and wife have or may have separate interests in this state, we can see no good reason why the city could not levy taxes on the real estate of the wife (although it be occupied as a homestead,) to pay the husband for grading a street in front of such real estate. Nor can we see any good reason why the husband may not, if he chooses, insist upon such a thing being done. The question in such a case is, simply, whether the husband or the wife shall own and control the money due for the grading; whether the money shall be collected from the wife and paid to the husband, or whether the wife shall be allowed to retain the money. In this state where husbands and wives are allowed to hold separate property and carry on separate business, we see no good reason why said money may not be collected from the wife

and paid to the husband.. If the husband should sue some person on a promissory note, no one would claim that such person could plead in set-off a promissory note against the wife. As we have before said, the husband has some interest in the real estate of the wife occupied by themselves as a homestead, but the interest is not such as renders the husband *individually* liable for any taxes that may be imposed thereon. Therefore, when the husband sues the city for a debt due to himself *individually* the city cannot plead in set-off taxes due on the real estate of the wife, although such real estate be occupied as a homestead by the husband and wife.

There are some other questions suggested. Stille petitioned along with others for the grading to be done; he sometimes in speaking of said real estate called it his; it is claimed that he did not do the full amount of the grading that he agreed to do, and that some of it was not in the street; but it was done where the city engineer instructed that it should be done, and just as the city engineer instructed that it should be done; and the city engineer afterward inspected and accepted the work and made a report thereof to the city council, and the city council regularly confirmed the engineer's report and levied a tax to pay for the grading. As to the effect of such confirmation, see laws of 1864, page 128, § 10. But the city never provided any means for the collection of said tax. It is true, the city treasurer sold some of the property on said street to pay said tax, but the sale was unauthorized and void. Stille sold and assigned a large portion of his claim against the city for grading. But deducting that from his claim, and deducting all that Stille has ever received or been paid on his claim by any person or from any source, and deducting every thing else that ought to be deducted, and still he ought to recover at least the amount allowed him by the court below, provided however that he is entitled to recover anything. We do not choose to discuss this case in its moral aspect. For whether the plaintiff is entitled to recover or not in a strictly moral point of view, we think he is legally entitled to recover.

The judgment of the court below is affirmed.

All the Justices concurring.