B. H. DAYTON, *et al.*, v. G. W. DONART, *Administrator, &c.*

1. HOMESTEAD; *Title of Widow and Children Therein; Occupancy; Abandonment.* Where a man owning and occupying a certain piece of land as his homestead dies intestate, owing many debts and leaving no personal property with which to pay them, and no real estate except said land, and also leaves a widow and several children, some of whom are occupying said land at the time of the intestate's death, *held,* that the title to said land descends to his widow and children, (adults as well as minors, and to those who do not reside upon the land as well as to those who do,) just the same as it would descend if the property were not occupied as a homestead, except that it descends to them subject to a certain homestead interest vested in the widow and such of the children as occupy the homestead at the time of the intestate's death. And further, *held,* that so long as said widow and children continue to occupy the homestead, and the widow does not marry again, and one or more of the children remain minors, they may hold the property as their homestead, as though it were their absolute property, free from all debts, (except incumbrances given by husband and wife, and taxes, and debts for purchase-money and improvements,) and free from division or distribution; but if they all abandon the property as a homestead (without any change of title), it then becomes subject to debts (the intestate's as well as their own) and to division, the same as though it had never been a homestead.

2. HOMESTEAD RIGHT, *Nature of; Sale before Abandonment; When Liable for Intestate's Debts.* The homestead-exemption right vested in the widow and children of an intestate, is just like any other homestead-exemption right, except that it is held by the occupants (prior to the widow's remarriage, and prior to all the children's reaching their majority) free from division or partition as well as free from debts, and when it is abandoned as a homestead (if not previously sold), it becomes liable for the intestate's debts, as well as for the occupant's own debts. And further, *held,* that if the property or any interest therein is sold and conveyed while the property is still occupied as a homestead by the widow and any one or more of the minor children, the title to such property or interest passes to the purchaser free from all debts, except prior incumbrances given by the intestate and wife, or grantor and wife or husband, and taxes, and debts for purchase-money and improvements, although the property may afterward be abandoned as a homestead by the widow and children.

### Error from Greenwood District Court.

AT the May Term, 1878, the district court affirmed an order made by the probate court of Greenwood county, Octo-

ber 25, 1877, that *G. W. Donart*, administrator of the estate of James M. Church, deceased, should sell certain land belonging to the above estate, to wit, the S. ½ of the S.W. ¼ of sec. 11, and the N. ½ of the N.W. ¼ of sec. 14, in township 28, south, of range 12, east, in said county, in order to pay certain debts against the estate aforesaid.   Upon the trial of the foregoing appeal from the probate court, the judge of the district court made findings of fact and a conclusion of law therefrom, as follows:

1. That sometime prior to July 21, 1873, J. M. Church died intestate, leaving no personal estate.

2. At the date of his death, he, together with his family, consisting of his wife, Justina Church, and his minor children, Jacob Church, Charles Church, Thomas Church, Amos Church, and Mary Crow, were occupying as a residence the land mentioned in the administrator's petition filed in this proceeding; and said Justina Church, together with her minor children, continued to occupy the same as a residence for ten or twelve months continuously, after which they resided elsewhere for an indefinite time, and then returned to said premises, and there resided until sometime in the year 1877, when she, together with her minor children, removed to Humboldt for the purpose of residing in a house in that city which had been conveyed to Justina Church by Dayton and Barber, in consideration for a deed for five-twelfths interest in said premises by said Mrs. Church to said Dayton and Barber, while still in possession of the same.

3. On the 21st of July, 1873, said Mrs. Church was appointed administratrix of the estate of her deceased husband, and was removed from her said office on the 25th of November, 1875.

4. G. W. Donart was duly appointed and qualified as the successor of said Justina Church, on the 25th of November, 1875; said administrator filed his inventory in the office of the probate court, which showed no property, either real or personal, except the lands above mentioned.

5. On the 25th of October, 1877, upon petition therefor filed, the probate court, due notice thereof having been given, made the order now appealed from.

6. At the time of making said order, the following claims had been duly exhibited and allowed against the estate of

17—22 KAS.

said Church, deceased, and at the times and in favor of the parties hereinafter named, to wit:

Dec. 20, 1875, P. S. Smith, class 5; amount, $92.00.
Dec. 20, 1875, Hull & Mooney, class 5; amount, $20.56.
Dec. 20, 1875, Hull & Mooney (note), class 5; amount, $397.00.
Dec. 20, 1875, J. B. Clogston, class 5; amount, $60.79.
Dec. 20, 1875, Jackson & Hickox (note), class 5; amount, $303.33.
Dec. 21, 1875, B. J. Pugh, class 5; amount, $36.00.

Which were all the claims that were allowed at any time by said probate court.

7. Said claim of Jackson & Hickox was upon a note, the consideration whereof was for money borrowed to be used, and used in fact to purchase said premises from the government.

8. There was no personal property in the hands of said administrator with which to pay said indebtedness.

9. Amos, Thomas and Charles Church are still minors; the other children have attained their majority.

10. That ever since said Justina Church removed from said premises, the same have been, and were at the time of filing the petition and making the order appealed from, in the possession of a tenant, who held the same for said minor children and certain grantees of adult heirs of decedent.

And thereupon the court, as its conclusion of law from the foregoing facts, found—

"That the administrator is entitled to an order for the sale of the real estate mentioned in his petition, as is therein prayed for."

To which conclusion of law the appellants and each of them did then and there severally except. Afterward, the court, upon the above findings of fact and conclusion of law therefrom, rendered judgment for costs in favor of said administrator, and against the appellants from the above order of the probate court; and the court further adjudged and ordered, that *G. W. Donart*, administrator as aforesaid, proceed to sell, according to law, the above-described real estate belonging to the estate of James M. Church, deceased, and that he apply the proceeds of such sale to the payment of the foregoing debts against said estate, and the costs of the administration thereof. A new trial being denied, the parties interested in the land, to wit, *B. H. Dayton, E. A. Barber,*

*J. B. Cates, L. W. Keplinger,* and the widow and children of said decedent, bring the case here for review.

*Cates & Keplinger,* for plaintiffs in error:

1. At the outset we call attention to the broad distinction which exists between the exemption law and the right secured by the law of descents and distributions. The homestead-exemption law is a mere exemption, and does not create an estate or an interest in land. (*Finley v. McConnell,* 60 Ill. 259.) The same may be said of the right of the widow and children to the homestead, under the laws of many of the states. Not so with us. Our law evidently contemplates that at some time the heirs acquire an estate in the homestead; that it becomes their "absolute property," wholly exempt from the debts of the deceased. Exemption under the homestead law is a right based and dependent upon occupancy. The exemption of the law of descents and distributions is based upon and derived from title. In the hands of the heirs the homestead is exempt, because it is their absolute property. It may be claimed that the estate which the heirs take is liable to be divested by removal from the premises. No word can be found which more completely negatives such an idea than the word "absolute," used by the legislature when it provided that the land should become the *absolute* property of the heirs. Not only so, but the law provides that the property shall be *wholly* exempt from payment of the ancestor's debts. We further find that the law makes provision for partition of the premises among the heirs. The law contemplates that *sometime* the homestead becomes forever free from the debts of the deceased; that sometime it becomes the property of the heirs to do as they please therewith, without thereby subjecting it to the payment of some other person's debts. When does this time arrive? A determination of this question involves a construction of the clause "continued to be so occupied," in the act relating to descents and distributions.

Either this land was continued to be occupied by the

family of the deceased after his death, or it was not.   If it was, then the estate contemplated by the statute vested.   Were these lands continued to be occupied by the debtor's family after his death?   This question could have been answered in the affirmative just as truly at the end of the first year as at the end of the twentieth, or on the day prior to, or upon the day after the youngest child attained its majority; and just as truly the day before as on the day after partition.   The very first instant this question could be truthfully answered in the affirmative, that instant the land became the "absolute property" of the heirs, and "wholly exempt" from the ancestor's debts.   If the land was occupied at all after the death of Church by the family, in-good faith and with no present intention of removing, such occupancy, however brief, was sufficient to satisfy the law, and make it the absolute property of the heirs.   Twenty years' occupancy has no greater potency in this respect, under the law, than one year.

The fact that all the children have attained their majority, while it gives them a right to partition, does not give them any greater estate—it merely gives them a right to make partition of such estate as they already have.   Neither can it be maintained that partition can have any effect to relieve the property from a liability for Church's debts.   Partition is a process, not for increasing one's interest in lands, but rather for the division of such estate as he already has.   If continued occupancy were necessary to keep this property from the creditors of the estate prior to partition, it is no less necessary after partition.   To say that either a right to partition, or the fact of partition, is necessary to free this land from the possibility of being sold by the administrator, is to interpolate into the statute provisions which it does not contain.   Either the briefest continuance of the occupancy would be sufficient to render the homestead forever exempt, or no occupancy, however long continued, could have such an effect.   Continued occupancy, and continued occupancy alone, is the test.   The only question is as to the proper construction of the clause.   To say that the briefest continuance sat-

isfies the law, does no violence to the statute. To say that it does not, is to say that no amount of occupancy satisfies the law, and degrade the estate secured to the family by the law to a mere exemption dependent upon continuous occupancy, and to render meaningless the strong language of the statute providing that it shall at some time become the "absolute property of the heirs, wholly exempt from the ancestor's debts."

2. Whatever the estate intended by the phrase "absolute property" may have been, such estate vested the very first instant the land came within the exemption clause found in the statute of descents and distributions. The exemption clause and the absolute-property clause are inseparable. They are the two-fold results of a common cause, and the rights secured by each come into existence at the same instant. The same facts which are sufficient to bring the land within the exemption, are sufficient to make it the absolute property of the heirs, and when it becomes the absolute property of the heirs and wholly exempt from the ancestor's debts, the heirs do as they please with it, without rendering it subject to those debts.

3. Granting all that defendant claims as to the necessity for continued residence, the homestead was never abandoned.

(a) The record shows that at one time the land was the homestead and residence of the family; that the court was requested by both parties to make special findings of the facts, and did so. The court nowhere finds an abandonment, or facts equivalent thereto. The findings of the court show the land to have been occupied by the tenant of the minor heirs at the date of the order appealed from.

(b) The family consists almost exclusively of minor children. The law gives them an "absolute property" in the land. They cannot by contract be divested of their rights in that land, for they are incapable of contracting, nor can they be by abandonment. Abandoment consists of act and intent. Infants are incapable in law, either of performing the act or of entertaining the intent, nor can they be prejudiced by the

acts or intent of those having them in charge. The authorities upon this point are conclusive. (*Booth v. Goodwin*, 29 Ark. 633; *Walters v. People*, 21 Ill. 179; *Harkens v. Arnold*, 46 Ga. 656.) In law, therefore, the infant heirs of Church have never abandoned the homestead. They are to this day in the possession and occupancy of this land, and are now insisting upon their rights under the law.

4. It will be observed it is the homestead, and not a part thereof, or any interest therein, which is exempt. If any member of the debtor's family still continues to occupy the homestead, the homestead in its entirety is wholly exempt. Therefore, the infants having never abandoned the homestead, a sale of the interest of the adult heirs made for the payment of the ancestor's debts, would be as completely in violation of law as would be an order for the sale of the entire homestead. Church borrowed money for the purpose of purchasing the land in question, used it for that purpose, and gave his note therefor. Was this not an "obligation for the purchase" within the act relating to descents and distributions? No authority goes to the extent of holding that it was. It may have been borrowed for that purpose, but there is nothing in the record to show that it was loaned for that purpose, or that the payees of the note had any knowledge as to what Church intended to do with the money. To hold this note as an "obligation for the purchase of the premises," would be to take a step far in advance of the advanced ground of *Nichols v. Overacker*, 16 Kas. 59. In that case the "money was loaned for a particular purpose, known to both parties." (See Thompson on Homesteads, p. 341.)

Granting that this was a purchase-money obligation, it should have been proved as such in the probate court, but the records of that court show that it was proved as an ordinary claim. We further urge that even if it were a purchase-money obligation, the probate court had no authority to sell this land. The probate court has no authority to sell land, except such as may be liable to pay debts generally. This

land could only be sold by proper proceedings in the district court. (10 Cal. 385.) Conceding that the note to Hickox was an obligation for the purchase of the land, the grantees of the adult heirs of Church acquired rights prior to the order of sale, and to the extent of their interest the order of sale is erroneous.

It may be urged that the deeds offered in evidence are nullities, on the ground that the adult heirs have no right to execute conveyances of their respective portions until partition. What are the facts? While the widow and children were in the occupancy of the property, the creditors were about to proceed to sell the homestead for the payment of their claims. The widow executed a conveyance of a part of her interest to her attorneys, in order to secure the rights of herself and children to the remainder. Upon what principle is this deed to be held void? There is a broad distinction between the rights of the parties in the exemption act and in the act concerning descents and distributions. In the exemption law, the husband or wife owns the land. Any attempted conveyance without the assent of the other is a nullity, simply because such conveyance is expressly prohibited by the constitution.

What, if any, statutory or constitutional provisions stand in the way of an alienation by an adult heir of the interest he may have by virtue of the act relating to descents and distributions? We find the act places just one limitation, and no more, upon the owners of such interest, namely: they cannot compel partition until the time provided by law. A restriction upon alienation and a restriction against partition, are as distinct in their nature as they can well be. The general rule is, statutes creating an exemption do not operate to restrain the power of voluntary alienation, unless it be so expressed. Mere exemption from forced sale does not have this effect. (Thompson on Homesteads, 453.)

5. The question as to whether or not the conveyances to the grantees of adult heirs are valid, is, however, immaterial upon any view of this case. The infant heirs have never aban-

doned; therefore their interest cannot be sold. As to the interest of the adult heirs, we propose this dilemma: Either the adult heirs did have a right to convey, or they did not. If they did, then in that event their deeds passed their interests, and there is nothing left for the administrator to sell. If they did not have a right to sell their interests, neither has the administrator any right to sell their interests. Every argument against the power of the adult heirs to alienate, is no less an argument against the power of any one to alienate such interest. An alienation of the interests of the adult heirs by the probate court, would operate no less disastrously upon the interests of the heirs than alienation by the heirs themselves. There is no express statutory prohibition against alienation, and therefore any spirit or purpose or legislative intent, either actual or imaginary, which impels the court to hold one species of alienation void, would also require the other to be held void likewise.

*Clogston & Martin,* for defendant in error:

In framing § 2, ch. 33, Gen. Stat., was it the intention to give the widow and the children the absolute ownership in and to said homestead, the only thing required to make the same absolute to them, being for them to continue to reside thereon for one day, or any definite time, after the intestate's death? Or was it the intention of said act concerning descents and distributions to give said widow and children absolute property in the homestead immediately after the death of the owner, or only the homestead right, that of possession, free from the payment of debts and from distribution until the happening of one of two events named in § 5 of said act—that is, where the widow again marries or the youngest child becomes of age—then to be partitioned, one-half to the widow and one-half to the children; then becoming their absolute property free from the debts of the deceased?

A homestead right is, in all its conditions, dependent on occupancy, without which there cannot be a homestead.

Then do the widow and children, by the statute of descents and distributions, have any greater rights to the homestead than the deceased had before his death? It was as free from the payment of his debts before his death as it could be to his widow and children after his death, and both depend on occupancy.

But counsel for plaintiffs in error say that the time of residence is not material if the family of the deceased reside thereon any length of time in good faith. If this be true, "continued to be occupied by his widow and children after his death" would have no meaning. Apply the same construction to the exemption law, and what would be the effect? Counsel again say: "We repeat, that the law contemplates that sometime the homestead becomes forever free from the debts of the deceased; that sometime it becomes the property of the heirs, to do as they please therewith, without thereby subjecting it to payment of some other person's debts." We say the same thing: if they continue to reside on the homestead until the happening of one of the two events mentioned in § 5, then their property in the homestead would be absolute, free from all debts of the deceased, and not till then.

Plaintiffs further say, that partition gives the heirs no better title than they had before, or could have under the law of partition. The heirs have their interests determined by the court, and their homestead interest ceases, and occupancy is no longer required.

Counsel say, "By what principle of law can these heirs' rights to the land be divested?" We say, by abandonment. Counsel further say, "The infant heirs are incapable of contracting, and cannot abandon." Have the children of said deceased any greater rights in the homestead after his death than before? Parents govern the residence of their minor children. This is just as true after the father's death as before. Their abandonment with their mother is just as complete as it would be with the father and mother. The homestead is exempt, not to the father or head of the family, but to the family of the owner who resides upon the land.

Can the adult heirs and widow, who have abandoned, taking with them the minor heirs, and making a home elsewhere, claim that the minor heirs are still in possession of the homestead? They do not claim but that the adult heirs and the widow have abandoned the land, and further, the widow and adult heirs have sold their interests in the land in question. This of itself is the best evidence that they have abandoned it. (*Eaton v. Ryan*, 5 Neb. 47.)

We fail to see the consistency of counsel, who say the lands in question are still a homestead, and yet urge this court, as they did the district court, to recognize the title of Dayton, Barber, Cates and Keplinger, who are the grantees of said widow and adult heirs of the deceased. Now if the widow and adult heirs can abandon and sell their interest in the land, we ask cannot the minor heirs by their guardian sell their interest?

The home on the homestead was broken up, the widow and the adult heirs had sold eight-twelfths of the same to Dayton, Barber, Cates and Keplinger, who are the only real plaintiffs in error in this case. Counsel complain that the district court erred by refusing Dayton, Barber and these counsel for plaintiffs in error to show their title to the land in question, by showing deeds from the widow and adult heirs to them. We think that it has already been decided (*Cooper v. Armstrong*, 5 Kas. 78) that the district court can only try what the probate court could try. The probate court had no authority to go further than to see that the land had been duly inventoried by the administrator as assets in his hands belonging to said estate. There being no personal property in the hands of the administrator to pay the debts of said estate, can the probate court go behind the inventory to sell real estate for the payment of debts? If the probate court finds no personal property on the inventory subject to the payments of debts, it then orders the real estate inventoried as assets and subject to the payment of the debts of the deceased, to be sold. If that is the power of the probate court, the district court did not err in refusing to permit plaintiffs

in error to introduce as evidence their deeds from the widow and adult heirs, to show their interest in the land in question.

As to the Hickox note, the court below found, upon sufficient testimony, that it was for the purchase-money of this land, which we think sufficient on that point.

The opinion of the court was delivered by

VALENTINE, J.: In 1873, while James M. Church was owning and occupying a certain piece of land with his family, which consisted of a wife and five children, he died intestate, owing many debts and leaving no personal estate with which to pay them, and no real estate except the said land, which he occupied as a homestead. The family continued to reside upon said land for about one year after Church's death, when they removed therefrom, but afterward returned thereto, and occupied the same until in 1877, when they again removed therefrom. While they resided upon the land, two of the children executed deeds conveying to their mother, Mrs. Church, all their interest in the premises, and their mother executed deeds conveying portions of her interest to Cates & Keplinger and to Dayton & Barker. The consideration for the conveyance to Dayton & Barker was another piece of land conveyed by them to her, which she then contemplated making and afterward did make her homestead. On October 25, 1877, the probate court, on proper petition and due notice given to all the parties interested, made an order that the administrator of the estate of said James M. Church, deceased, to wit, G. W. Donart, should sell said land to pay said debts. Whereupon the parties interested in the land, to wit, Dayton & Barker, Cates & Keplinger, and said widow and children, took an appeal to the district court. In the district court, a trial was had before the court, without a jury, and judgment was rendered confirming the order of the probate court, and against the appellants for costs. The appellants then, as plaintiffs in error, brought the case to this court.

A decision of this case involves the construction of the statutes of 1868 relating to descents and distributions, and

kindred statutes. (See Gen. Stat., p. 392, §§ 1 to 6; p. 439, § 39; p. 454, § 114; p. 713, § 443; p. 1107, § 1; also, *Vandiver v. Vandiver*, 20 Kas. 501.)

The plaintiffs in error claim that when Church died, the title to said real estate went absolutely, unconditionally, entirely and finally to his widow and children then occupying the premises; and they claim this, under the statutes, on the mere ground of occupancy alone. They say that the first moment of *bona fide* occupancy by the widow and children so fixed the title in the occupants that no subsequent abandonment by them would have the effect to expose the property to liability for the payment of Church's debts. Now, if mere occupancy alone for any period of time, long or short, could have the effect to so free the land from liability for Church's debts that no subsequent abandonment of the premises would expose them to such liability, we should think that under the statutes a moment's time would be just as good as any longer period of time. But in our opinion no period of time, however long, is sufficient to give absolute title, free from debts, if the debts remain unpaid and not barred by the statute of limitations. The construction of the statutes contended for by the plaintiffs in error is open to many objections:

1. It would often work injustice to the ancestor's children, or to a portion of them; for if all the property should go absolutely and unconditionally to the intestate's widow and children, adults and minors, living at his home at the time of his death, *none of it could ever go* to the intestate's children, minors or adults, living away from his home at the time of his death.

2. It would lead to endless litigation; for it is often difficult to tell whether a father's adult children still have their residence at his home or not.

3. It would render nugatory the following words of the statute, to wit: "And continued to be so occupied by his widow and children after his death." (Gen. Stat. 392, § 2.) These words are found in the very statute, the very section

and the very sentence under which the plaintiffs in error make their claim. Every widow and child residing upon the husband's or father's homestead at the time of his death, almost necessarily continues to reside there for some time afterward. And hence, with the construction of the statutes contended for by the plaintiffs in error, the title would always be made absolute and unconditional in the widow and such of the children as might reside upon the premises at the time of the intestate's death.

4. It would render nugatory that clause of § 4 of the same statute, which reads as follows: "If the intestate left no children, the widow shall be entitled to said homestead." (Gen. Stat. 392, § 4.) For, according to the theory of the plaintiffs in error, the entire property goes, independent of said clause of § 4, only to the widow and such of the children as reside upon the homestead at the time of the intestate's death. Hence, if no one but the widow resided upon the homestead at the time of the intestate's death, she alone would take the entire property, whether he left any children or not.

5. It also, in our opinion, contravenes the provisions of § 5 of the same act. (Gen. Stat. 392.) For, as we have already decided in the case of *Vandiver v. Vandiver*, 20 Kas. 501, when the homestead is divided under the provisions of that section between the widow and children, each child, whether adult or minor, and whether he ever resided upon the homestead or not, is entitled to receive an equal share of the homestead with the other children, and all the children together are to receive one-half of the homestead, and the widow the other half.

We might perhaps point out other objections, but these we think are sufficient. Evidently the construction contended for by the plaintiffs in error is not the correct one. In our opinion, when a man dies intestate, leaving a widow and children, the ultimate title to his homestead descends to his widow and children just the same as the title to all his other real estate does, except that it descends to them subject to a homestead

1. Homestead; title of widow and children therein; occupancy; abandonment.

interest vested in the widow and such of the children as occupy the homestead at the time of the intestate's death. This construction of the statutes is in harmony with justice and with all our statutes and with every portion thereof, except perhaps with the word "absolute," contained in § 2 of the act relating to descents and distributions. (Gen. Stat. 392.) But this word "absolute," as used in said § 2, evidently does not mean what it would in some other cases. It, together with the words used in connection therewith, simply means: that so long as the widow and children continue to occupy the homestead, and the widow does not marry again, and one or more of the children still remain minors, they may hold the property as their homestead as though it were their absolute property, free from all debts (except incumbrances given by husband and wife, and taxes, and debts for purchase-money and improvements), and free from division or distribution. But evidently from the statutes they hold the property as their absolute property, free from debts and division only while some of them occupy the same as their homestead. If they all abandon the property as a homestead, it then becomes subject to debts and division the same as though it never was a homestead. This homestead right is probably just like any other homestead-exemption right, except that it is held by the occupants (prior to the widow's marriage, and prior to all the children's reaching their majority) free from division or partition, as well as free from debts; and when it is abandoned as a homestead (if not previously sold), it becomes liable for the intestate's debts, as well as for the occupants' own debts. If we are correct in this — and we think we are, for we know of no reason why we are not correct — then it necessarily follows, from prior decisions of this court, that if the property or any interest therein is sold and conveyed while the property is still occupied as a homestead by the widow and any one or more of the minor children, the title to such property or interest passes to the purchaser free from all debts, except prior incumbrances given by the intes-

2. Homestead right, nature of; sale before abandonment; when liable for intestate's debts.

tate and wife, or grantor and wife or husband, and taxes, and debts for purchase-money and improvements, although the property may afterward be abandoned as a homestead by the widow and children. (*Morris v. Ward*, 5 Kas. 239; *Hixon v. George*, 18 Kas. 254, 260.) Upon this point, we differ from the court below. The court below seems to have held that no sale of the property could free it from liability for the intestate's debts; that as soon as the property was abandoned as a homestead, it became liable for the intestate's debts, whether the property had previously been sold and conveyed or not. In this, we think the court below erred.

There are some other questions in this case, but we do not think it is necessary to decide them now. Probably the exact questions which we now pass over will never arise again.

The judgment of the court below will be reversed, and cause remanded for further proceedings.

All the Justices concurring.