ANN B. VINING *et al.* v. A. J. WILLIS.

HUSBAND AND WIFE — *Wife's Separate Estate — Right to Devise.* Where a husband and wife occupy a piece of land as their homestead, she owning the same, and the legal title thereto being in her name, and she having no children, she can, by will, and without the consent of her husband, devise a one-half interest in the land or any less interest therein, to a third person, so that after her death such third person can take the interest attempted to be devised.

*Error from Ottawa District Court.*

ACTION to quiet titlé. Judgment for the plaintiff *Willis*, at the May term, 1887. The defendants, *Vining* and others, bring the case to this court. The material facts are stated in the opinion.

*Gleed & Gleed, R. F. Thompson,* and *W. E. Richards,* for plaintiffs in error.

*Garver & Bond,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Ottawa county by A. J. Willis against Ann B. Vining, Catherine Rouson, Ada A. Reed, Louis A. Arzeno and Jennie Miller, to quiet the plaintiff's title to a certain forty-acre tract of land situated in said county. The case was tried before the court without a jury, and the court made special findings and conclusions of fact and of law, and rendered judgment upon the same in favor of the plaintiff and against the defendants, quieting the plaintiff's title, and for costs of suit; and the defendants below, as plaintiffs in error, bring the case to this court.

The aforesaid property belonged originally to Mary D. Willis, the title thereto being in her name, and she being the absolute and unqualified owner thereof in fee simple. On September 27, 1885, she died, leaving surviving her a husband, to wit, A. J. Willis, the plaintiff below, who is now the defendant in error. She left no surviving children. The plaintiff below now claims that he, as the surviving husband of Mary D. Willis, owns the entire tract of land and every interest therein. The defendants below, plaintiffs in error, claim that they own an undivided one-half interest in the land under and by virtue of a will executed by the owner, Mrs. Willis, during her lifetime. The plaintiff below also claims that the aforesaid property was the homestead of himself and wife prior to and at the time of her death. Now assuming for the purposes of this case that the aforesaid tract of land was in fact the homestead of Willis and his wife at the time of her death, then the only question to be considered or determined in this case is as follows: Where a husband and wife occupy a piece of land as their homestead, she owning the same, and the legal title thereto being in her name, and she having no children, can she, by will, and without the consent of her husband, devise a one-half interest in the land, or any less interest therein, to a third person, so that after her death such third person can take the interest attempted

to be devised ?   The plaintiff below claims that under such circumstances and in the present case the will is utterly void, and the court below so held, and this for the reason, and only for the reason, that the plaintiff below and the court believed that the will contravenes that provision of § 9, article 15, of the constitution, which reads as follows :

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempt from forced sale, *under any* process of law, *and shall not be alienated without the joint consent of husband and wife, when that relation exists.*"

The plaintiff below, to support his claim, relies solely upon that portion of the foregoing provision which we have put in italics.   Indeed, he relies solely upon an interpretation or definition given by himself to the word "alienated."   He claims that to execute a will for the purpose of devising real estate is to *alienate* the real estate, and that it is such an *alienation* as is contemplated by the foregoing provision of the constitution; and upon this claim, and this claim alone, he founds his further claim that the will in the present case is utterly void.   We think these views are utterly untenable. A will never *divests* the owner of his property or of any interest therein.   No interest passes by the will to the intended devisee; nothing that he can sell, or transfer, or incumber; nothing that will pass from him to heirs or that he can devise or bequeath; and the will may be revoked by the testator immediately after its execution or at any time afterward and before his death.   A person might execute a thousand wills for the same property, yet no one of such wills would *transfer* anything; but when the testator should die the devisee mentioned in the last will executed would, under and *by virtue of the statutes*, take the property.   It would not be the will, however, but death that would take the property *from* the testator; and it would be death, the statutes, and the will, all operating together, that would *confer* the property upon the devisee.

In the case of *Comstock v. Adams*, 23 Kas. 524, the following language is used:

"A will is never a conveyance. A conveyance operates in the lifetime of the grantor, while a will does not operate until after the death of the maker. Of course death transfers all property, and a will says where it shall go; but this does not render a will 'a conveyance which the husband has made.' It is the death that transfers the property."

In the case of *Martindale v. Smith*, 31 Kas. 273, the following language is used:

"When death occurs, the title to the property of the person dying must be transferred to some person. It cannot remain in the deceased; and the will simply designates where the title shall go. The title may go to one or more of the persons occupying the property as a homestead, or it may go to some other person."

It is not the will alone, however, that determines where the title shall go, for the will operating alone would be powerless. It is the will, and death, and the statutes, operating together, that determine where the property shall go. Indeed, it is the statutes which give force and efficacy to all. A will which is never operative or in force during the lifetime of the testator, is in this respect wholly unlike a deed or contract, which must have force and effect as soon as it is executed. When a deed or contract is executed, it cannot, like a will, be revoked or annulled at the mere whim or caprice of the maker. As soon as a deed or contract is executed, unlike a will, rights are vested under it which cannot be divested or destroyed at the mere option of the maker. It is true that a deed or contract may transfer property upon a contingency, or upon a condition precedent or subsequent, or to be used and enjoyed only at or after some future time; but still when the deed or contract is executed, rights become vested which cannot legally be disturbed or impaired by the maker, and the deed or contract is irrevocable so far as the maker alone is concerned. The party taking under the deed or contract has a right to rely upon it with all its contingent or conditional stipulations, and with all its stipulations for future use and enjoyment.

The word "alienated" as used in the constitution does not mean what the plaintiff below claims that it does. The word as used in the constitution we think means a voluntary parting with or surrendering of some interest in the homestead. And as a person never parts with or surrenders anything by virtue of a will, but only by reason of his or her subsequent death, and as it can never be supposed, without proof, that any person will voluntarily bring about his or her own death, it necessarily follows that the aforesaid constitutional provision can have no application to wills. Nor does the word as generally used mean what the plaintiff below claims that it means. The word as generally used means the passing of a thing *from* another, or the *separation* of two things, and not the *conjoining or uniting* of things. The passing of an estate or title *from* a person is an alienation, but the passing of an estate or title *to* a person is not an alienation: to say that a thing may be alienated *to* a person, if intended as a complete phrase, is a solecism. The word perhaps is sometimes used in this manner, but when so used the phrase is elliptical, a large portion thereof being understood, and when completed by adding the omitted words and the words which we have placed in brackets, it would read and mean substantially as follows: A thing may be alienated [*from* the person having it, and *transferred*] *to* a person [not having it.] When two things are united or joined together they are not alienated. It is only when they are *separated from each other* in some manner, when they are *disjoined*, or when they become *foreign to each other*, that they are alienated. Now a will, as before stated, never operates to separate an estate or title from the owner, never takes it away from him, and never diminishes his interest therein. He continues to hold it and all of it until the very last moment of his life, and until his life becomes extinct, although the will may have been executed any number of years; and when he dies the estate or title does not pass from him because of the will, but only because of the death. If he should live forever the estate and title would never pass from him because of the will; but, as die he must at some time, the estate and

title would pass from him at his death, whether any will had ever been executed or not. A will therefore does not, and it never can, alienate an estate. The estate, however, when a will is executed, passes to the person designated by the will, but this passing of the estate *to* such person, as before stated, is *not* an alienation. This passing of an estate *to* a person must be given some other name, as a "reception" or a "union," or an "association." The words, then, "alienation" on the one side, and "reception" or "union" or "association" on the other side, would bear to each other a relation similar to that existing between the words "sale" and "purchase," or "delivery" and "reception." We know that text-writers have sometimes broadened the word "alienation" so as to make it include the transfer of property by will and death and the statutes; and perhaps this use of the word in such a case is not inaccurate. But as before stated, the efficient cause of the "alienation" in such a case, indeed the sole cause, is death, and the will and the statutes merely say where the title and estate shall go. It is also true that text-writers sometimes, in using the term broadly as they sometimes do, omit the words "death" and "the statutes;" but these words are always understood. No text-writer is so ignorant as to suppose that a will alone can transfer an estate.

But it may be claimed that the ownership of the homestead is in the family in the aggregate, and not merely in the person in whom the legal title is vested; and therefore, that whenever a transfer of the ownership is had, in whatever mode or by whatever means, it is an alienation of the homestead *from* the family. The constitution, however, says that "a homestead . . . occupied as a residence by the *family* of *the owner* . . . shall not be alienated without the joint consent of husband and wife when that relation exists." This clearly implies that it was not intended that the family as a family or any member thereof, except the ostensible owner, should be considered as an "owner." "The family" and "the owner" are clearly contradistinguished by the constitution itself. But passing over all the rights, or supposed rights, of

the children who may occupy the homestead, we shall consider the question of *ownership* only with respect to the husband and wife; for the consent of the children, who may occupy the homestead, is never required for the purpose of transferring or alienating the homestead. In the case of *Jenness v. Cutler*, 12 Kas. 516, this court has said as follows:

"We suppose it may also be said that the wife has in one sense an estate in the homestead occupied by herself and husband, although the title to the same may be in her husband; but still, if it is an estate, it is such an estate as has never been defined by law, an estate unknown to the common law, technically no estate at all. The whole estate in such a case is in fact wholly in the husband, with merely a restriction for the benefit of his family upon his power to alienate the same. It is true, the wife has an interest in the homestead, a present and existing interest, an interest that will be protected by the courts; but it is simply an interest growing out of the marriage relation, and has no other or different foundation than the marriage relation and occupancy. It requires no instrument in writing to create such an interest, nor does it require any instrument in writing to destroy it. A merely going upon the premises, and occupying the same as a homestead, will create the interest. The abandonment of the premises as a homestead will destroy the interest. And if the wife should die while occupying the premises as a homestead she would have nothing that would descend to heirs, or go to her executors or administrators, and nothing that she could devise or bequeath. The whole estate would continue to belong to her husband, and after her death he could sell and convey the same by a deed executed by himself alone. As we have before said, the wife has a present and existing interest in the homestead, such as will be protected by the courts; *but so she has in all the other property of her husband.*"

See this case further with respect to the wife's interest in the property of her husband other than the homestead. See also the case of *Busenbark v. Busenbark*, 33 Kas. 572, where it is held as follows:

"While the wife's right and interest in the real estate of her husband, not occupied by the family as a homestead, is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the

life of her husband to prevent its wrongful alienation or disposition under fraudulent judgments procured and consented to by the husband with the object and for the purpose of defeating the wife's right."

The foregoing cases have relation to the *wife's* interest in the property of her husband, but they will apply with equal force to the *husband's* interest in his wife's property, as under the statutes of this state the rights of husband and wife in the property of each other are substantially the same. As to the husband's interest in the wife's property, see the case of *Green v. Green*, 34 Kas. 740. See also the case of *City of Leavenworth v. Stille*, 13 Kas. 548, where the following language is used, to wit:

"It is true, the husband has some interest in his wife's real estate which they occupy as a homestead, and that no other person has any such interest; but such interest is merely a right of occupancy, with a restriction upon the wife's power to alienate the property. It is no estate. The whole estate is vested in the wife; and at her death *it descends to her heirs*, or if alienated before death, the consideration therefor belongs to her."

In this case, however, the husband probably should not in justice or equity have any interest in his wife's property. They did not live together for some time before her death. She stayed in Michigan with friends, where she died; and before her death she employed counsel to procure a divorce for her on account of the extreme cruelty of her husband. The statutes, however, give him one-half of the wife's estate at her death, which she could not devise away from him.

The statutes also show that it was not believed, by the legislature, nor by the governor who approved such statute, that the constitution required that the title of a deceased owner of a homestead should necessarily pass to his or her family in the aggregate, occupying the homestead, or to his or her surviving wife or husband in particular. The statutes say in effect that the title to one-half of the real property of the deceased husband or wife having children shall pass to his or her surviving wife or husband, and that the title to the other

half shall descend equally to all the children of the deceased, *whether the children occupy the homestead or not*, whether they are married or not, whether they have families of their own or not, and whether they have independent homesteads of their own or not; or the title to this other half of the homestead may be devised by will to others than the occupants of the homestead, or to others than the wife or husband or children, at the option of the owner.    (See the statutes relating to descents and distributions, and the statutes relating to wills.) Under the statutes relating to descents and distributions it has already been held by this court as follows:

"Where a husband and wife occupied certain real estate as a homestead at the time of the husband's death, and their children were all of age, and none of them occupied the residence of the intestate at his death, nor thereafter, but the widow continued to occupy it as her home after the decease of her husband, the premises are the absolute property of the widow and her children; and the children, being all of age, are entitled to have the premises partitioned, one-half in value to go to the widow, and the other one-half in value to go to the children.    If the homestead is not susceptible of division, the same may be sold and the proceeds divided." (*Vandiver v. Vandiver*, 20 Kas. 501, syllabus.)

"Where a man owning and occupying a certain piece of land as his homestead dies intestate, owing many debts and leaving no personal property with which to pay them, and no real estate except said land, and also leaves a widow and several children, some of whom are occupying said land at the time of the intestate's death, *held*, that the title to said land descends to his widow and children, (adults as well as minors, and to those who do not reside upon the land as well as to those who do,) just the same as it would descend if the property were not occupied as a homestead, except that it descends to them subject to a certain homestead interest vested in the widow and such of the children as occupy the homestead at the time of the intestate's death.    And further *held*, that so long as said widow and children continue to occupy the homestead, and the widow does not marry again, and one or more of the children remain minors, they may hold the property as their homestead, as though it were their absolute property, free from all debts, (except incumbrances given by husband

and wife, and taxes, and debts for purchase-money and improvements,) and free from division or distribution; but if they all abandon the property as a homestead (without any change of title), it then becomes subject to debts (the intestate's as well as their own) and to division, the same as though it had never been a homestead.

"The homestead-exemption right vested in the widow and children of an intestate is just like any other homestead-exemption right, except that it is held by the occupants (prior to the widow's remarriage, and prior to all the children's reaching their majority) free from division or partition as well as free from debts, and when it is abandoned as a homestead (if not previously sold), it becomes liable for the intestate's debts, as well as for the occupant's own debts. And further *held*, that if the property or any interest therein is sold and conveyed while the property is still occupied as a homestead by the widow and any one or more of her minor children, the title to such property or interest passes to the purchaser free from all debts, except prior incumbrances given by the intestate and wife, or grantor and wife or husband, and taxes, and debts for purchase-money and improvements, although the property may afterward be abandoned as a homestead by the widow and children." (*Dayton v. Donart*, 22 Kas. 256, syllabus.)

In the case of *Gatton v. Tolley*, 22 Kas. 678, it is held that the adult heirs may sell and convey their interest in the homestead of their deceased ancestor, although it was still occupied by the widow and the minor heirs as their homestead, the conveyance, however, not to interfere with the right of occupancy of the homestead by such occupants as should not join in the sale and conveyance of the premises. In the case of *Chambers v. Cox*, 23 Kas. 395, it is said that "the question *is not, who will inherit from him?* but, has his title been divested? And the constitution says that his title to the homestead shall not pass unless his wife joins in the deed. *While the legislature may regulate the matter of inheritance*, it cannot avoid or limit the constitutional provision for the protection of homesteads"—thus implying that the constitution does not restrain the disposition of the title to the homestead after death.

The foregoing decisions under our statutes are just as applicable to the surviving husband of a deceased wife as they are to the surviving wife of a deceased husband.

The statutes relating to wills, so far as it is necessary to quote them, read as follows:

"SECTION 1. Any person of full age and sound mind and memory, having an interest in real or personal property of any description whatever, may give and devise the same to any person by last will and testament lawfully executed, subject, nevertheless, to the rights of creditors, and to the provisions of this act."

"SEC. 35. No man, while married, shall bequeath away from his wife more than one-half of his property, nor shall any woman, while married, bequeath away from her husband more than one-half of her property. But either may consent, in writing, executed in the presence of two witnesses, that the other may bequeath more than one-half of his or her property from the one so consenting." (Comp. Laws of 1885, ch. 117, §§ 1, 35.)

"SECTION 1. Any married person having no children may devise one-half of his or her property to other persons than the husband or wife.

"SEC. 2. All acts or parts of acts inconsistent or in conflict with the provisions of this act are hereby repealed." (Laws of 1883, ch. 163, §§ 1, 2.)

In the case of *Barry v. Barry*, 15 Kas. 590, it was said that the word "bequeath" in § 35 above quoted, probably means "devise and bequeath," and that under such section where a man has a wife and children "he can bequeath one-half of the property absolutely, and the other half with the written consent of his wife." In the case of *Martindale v. Smith*, 31 Kas. 272, the following language is used, to wit:

"We think the only question involved in this case is whether the will made by Waybright to his wife is valid, or not. If it is valid, Smith is entitled to the entire property; *but if it is void, Martindale is entitled to one-half thereof.* The plaintiff claims that the will is void for the reason that a husband cannot devise his homestead, or any part thereof, by will to his wife. Under the law relating to descents and distributions a wife would unquestionably take one-half of the homestead,

whether any will was made or not; and hence the real question involved in this case is, whether a husband can devise to his wife by will the other half-interest in his homestead. We think he can. At the death of the owner of real estate the title must go somewhere, *and we know of no law which prevents the owner from saying by will where it shall go. Indeed, the statutes recognize the right of the owner to designate where the title shall go, and even authorize the same."*

It is also said in the case of *Martindale v. Smith*, supra, as follows:

"We think the devise would also be subject to the homestead interests of any person who might have a homestead interest in the property; but with reference to who might have a homestead interest in the property, we do not think it is necessary in this case to express any opinion."

Now this is correct. It is really only what was in effect decided in the cases of *Dayton v. Donart*, 22 Kas. 256, and *Gatton v. Tolley*, 22 Kas. 678. In all cases when the owner of a homestead dies leaving a husband or wife and minor children occupying the homestead, the survivors may, *under the statutes*, irrespective of the constitution, continue to occupy the same until the surviving wife or husband marries again, or until all the children become of age, although the owner may have devised a half-interest in the homestead, or some less interest therein, to others than those occupying the homestead, or although some interest therein may have descended under the statutes of descents and distributions to others than those occupying the homestead.

We think it appears from the statutes and from the decisions of the supreme court, that the legislature, the governor, and the supreme court, have always been of the opinion that the aforesaid constitutional provision has nothing to do with the question as to where the title to real estate, occupied as a homestead, shall go after the death of the owner of such real estate. It is evident that it has always been their opinion that the word "alienated" as used in said provision means only a passing of some estate, title or interest in the homestead *from* the owner *during his lifetime,* and that it has no reference

whatever to where his title or interest shall go after his death. These statutes and decisions have all the force and effect of a contemporaneous exposition of the true intent and meaning of this constitutional provision.

The plaintiff below claims that the will is void, and that no portion of the property did or could pass to the defendants below, for the reason that "the joint consent of husband and wife" was lacking, and this for the reason that *he did not consent.* But certainly his wife never consented that her title to the property or to any portion of it should ever pass to him. Here again "the joint consent of husband and wife" was lacking; for she not only failed to consent, but, in the most solemn and express manner, dissented. There is no provision in the constitution that says the wife's interest in any property or any portion of such interest should at her death or at any other time go to her husband. Indeed, there is no provision in the constitution that says where any person's interest in property shall go when he or she dies. This is a matter of pure statutory regulation. In the present case the wife has expressly and solemnly said that no portion of her property should go to her husband; and all the interest that he can possibly get in her property, (which under the statutes is a half-interest,) he will get in opposition to her expressed wishes. How can the aforesaid constitutional provision, without Mrs. Willis's consent, benefit her husband, the plaintiff in this action?

But further, the constitutional provision prohibits the alienation of a homestead "without the joint consent of husband and wife" only "when that relation exists." Now it cannot be claimed in this case that any alienation took place at any time "when that relation existed." The property was the wife's property as long as she lived. She was dead before any interest passed from her, before the property ceased to be her property, and when she died "that relation" of husband and wife ceased to exist. When she died she was no longer the plaintiff's wife. And if an undivided one-half interest in her property then passed to others as directed by the will,

as we think it did, then it passed *after* the relation of husband and wife had ceased to exist, and not "when that relation exists." We think the plaintiff below is entitled to one un-

<span style="float:left">Husband and wife—wife's separate estate— right to devise.</span> divided half of the property in controversy, and the defendants below are entitled to the other undivided half. We have examined the authorities cited by counsel, and agree with nearly all that is said in them. There are possibly some things said in some of them with which we do not agree.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.