J. A. Smith v. Charles F. Becker *et al.*

No. 11,827. (64 Pac. 70.)

| 62 | 541 |
| p73 | 175 |
| 62 | 541 |
| f81 | 906 |

Descents and Distributions—*Effect of Sentence for Life.* Section 5583 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 102, § 311), which provides that when a person shall be imprisoned under a sentence of imprisonment for life, his estate, property and effects shall be administered and disposed of in all respects as if he were naturally dead, does not cast the descent of his property on his heirs by the fact of such sentence and imprisonment.

Error from Greenwood district court; C. W. Shinn, judge. Opinion filed March 9, 1901. *In banc.* Reversed.

*L. H. Johnson, J. B. Clogston, L. E. Clogston,* and *A. L. Redden,* for plaintiff in error.

*Alfred E. Hodgson,* and *Howard J. Hodgson,* for defendants in error.

The opinion of the court was delivered by

Smith, J. : The following question is presented in this case : When a person is imprisoned under a sentence for life, does his property, by that fact, descend to his heirs in all respects as if he were naturally dead? Those sections of the statute necessary to be considered read :

"A sentence of confinement and hard labor for a term less than life suspends all civil rights of the person so sentenced during the term thereof, and forfeits all public offices and trusts, authority and power ; and a person sentenced to such confinement for life shall thereafter be deemed civilly dead." (Gen. Stat. 1899, § 2254 ; Gen. Stat. 1897, ch. 100, § 376.)

"Whenever any person shall be imprisoned under a sentence of imprisonment for life, his estate, prop-

erty and effects shall be administered and disposed of in all respects as if he were naturally dead." (Gen. Stat. 1899, § 5583 ; Gen. Stat. 1897, ch. 102, § 311.)

But for section 5583 of the statute, *supra*, we are all agreed that the mere fact of a sentence and imprisonment for life would not cast the descent of the convict's estate. The declaration that a person in such condition shall be deemed civilly dead is to be interpreted as to its effect by a reference to the common law. In *Avery v. Everett*, 110 N. Y. 317, 18 N. E. 148, after an exhaustive review of all the authorities, the court said :

"It seems to be a necessary conclusion, from the rules of the common law governing rights of property as affected by forfeiture for crime, that civil death, one of the consequences of conviction for treason or felony, did not of itself, as a general rule, at least, operate to divest the offender of his title to his lands." (See, also, *Frazer v. Fulcher*, 17 Ohio, 260 ; *Baltimore v. Chester*, 53 Vt. 315.)

In Maine and Missouri statutory provisions similar to section 5583 exist, but they have received no judicial interpretation. The turning-point is the construction to be placed on the words "administered and disposed of." Administration has relation to personal property, and it is only where the personalty is insufficient in value to pay the debts of the decedent that the administrator exercises any control over the real estate. It descends to the heirs *eo instanti* upon the death of the ancestor. We think that by the use of the word "administered," in this provision relating to the estate of convicts, it was the intention of the lawmakers to restrict the administrator to the control and disposition of personal property for the benefit of creditors, to the end that all debts of the convict might be speedily paid. The words "disposed of" are not

in our judgment broad and comprehensive enough to reach to and embrace that act of the law which vests the ownership of property in an heir by inheritance. They can be more sensibly applied to affirmative action taken by a person either natural or artificial. It is an inapt expression to say that when an estate is cast by descent on the heir by the death of the owner it has been *disposed of*.

It will be noticed also that the two sections of the law under consideration are not a part of the statutes relating to descents and distributions. One section is found under the title of crimes and punishments, and the other under criminal procedure. In the present case the property in controversy is real estate, and there are no debts owing by the convict. If such estate has already devolved upon the heirs, an administrator can do nothing which will affect the lands. As applied to this case, the use of the word "administered" can have no force, for the estate in controversy can never come to the hands of an administrator.

In *Rachel Beard, Respondent, v. William J. Knox, Executor of William M. Beard, Appellant*, 5 Cal. 252, a statute was before the court for construction which related to the rights of husband and wife. It provided: "All property, acquired by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property." It was further provided that the husband should have the entire control of the common property, *with absolute power to dispose of it*, and upon the dissolution of the community by death, of either husband or wife, one-half of the common property should go to the survivor. It was held that the words "with absolute power to dispose of" ought not to be extended to a disposition by devise.

If descent be cast, *ipso facto*, by the sentence and imprisonment of a person for life, then such person may make testamentary disposition of his property before such sentence and imprisonment, which will take effect immediately thereafter. The incongruity of the convict's position in the ·event of a final acquittal or pardon may be noticed. From such sentence he may appeal to this court within two years after the judgment is .rendered. If he be granted a new trial ·and finally secure an acquittal, or his discharge from imprisonment be ordered, we may see a person formerly civilly dead living with heirs who have inherited his property. Again, it would be entirely legal for such person, though once pronounced dead in law, to be appointed administrator of his own estate, or to be called on to prove the execution of his own will. In the event of the convicted person making two wills, one before sentence and imprisonment and the other after his pardon or acquittal and immediately prior to his natural death, a confusing question would arise as to which will should be given effect.

In default of heirs, the application of the statute as contended for by counsel for defendants in error would cause the real estate of the convict to escheat to the state, involving a forfeiture of property, which ought not to be declared without express and unambiguous legislative direction.

Such considerations might be immaterial if the law were plain and explicit, for we have no doubt of the power of the legislature, by express language, to cast the descent of a convict's property, in the event of his civil death, on such persons as would be heirs at law in case of natural death. In cases of doubt, however, the argument *ab inconvenienti* is of much force. In an

exhaustive note to *Avery v. Everett*, supra, found in 6 American State Reports, 366, 383, the author says:

"We deduce, therefore, that in those states where there is a statutory provision that one imprisoned for life shall be deemed civilly dead, the legislature could not have intended that such convict should labor under greater disabilities than those entailed by the common-law decisions; and if the strict rule of the common law is not to be followed, it must be assumed—and especially so in view of our institutions and tenures here, and also in view of the fact that such convict may be pardoned—that one *civiliter mortuus* under the statutes ought not to be deemed naturally dead so far as retaining his title to property and protecting it is concerned, and that it ought not certainly to devolve upon his successors or heirs simply because of the disability of imprisonment. This construction of those statutes would, it seems to us, be founded in greater justice and more in consonance with the reason of the law, and more in keeping with the spirit of our institutions, than a conclusion to the *contra*."

The convicted person whose property is involved in the case at bar is, in fact, no longer civilly dead. Her sentence was, within a year after it took effect, commuted by the governor to a term of forty years. Her life has been restored. It ought not to be held that she has been divested of her property by operation of law unless the statute, in clear and explicit terms, has so declared.

The question raised by plaintiff in error, that the two sections of the statute under discussion are unconstitutional, has been decided against his contention in *Woodruff v. Baldwin*, 23 Kan. 491.

The judgment of the court below will be reversed and a new trial granted.

DOSTER, C. J., and POLLOCK, J., dissenting.

GREENE, J. (dissenting) : I dissent from the opinion of the court in this case, and am authorized to say that DOSTER, C. J., and POLLOCK, J., also dissent.

I agree with the court that section 2254 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 100, § 376), quoted in the opinion, does not and was not intended to cast descent. Under this section, one imprisoned for a period less than life is divested only of all civil rights, and I assume that the lawmakers knew this; hence the passage of section 5583 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 102, § 311), as follows :

"Whenever any person shall be imprisoned under a sentence of imprisonment for life, his estate, property and effects shall be administered and disposed of in all respects as if he were naturally dead."

This section means that when one is sentenced and imprisoned for life he is, as to all property interests, actually dead. The language used in this section is sufficiently apt and appropriate to cast descent. The word "administered," therein used, as defined by Webster, means "to manage or conduct, as public affairs ; to direct or superintend the execution, application or conduct of ; to settle, as the estate of one who dies without will or whose will fails of an executor." Bouvier defines it as "the management of the estate of an intestate or testator who has no executor." "Administrator," according to Bouvier, means, "a person authorized to manage and distribute the estate of an intestate or testator who has no executor."

An administrator in Kansas has absolute control, for the purpose of administering an estate, over real estate as well as personal property. It is true that the law requires an administrator in Kansas to dis-

pose of the personal property first, and pay the debts, if there be sufficient funds from the sale of it, but this is not because the administration of the estate does not include the real as well as the personal property, nor because real estate is more sacred than personal property, but because the personal property is more liable to waste, and, therefore, should be first cared for.   If there-be sufficient personal property to pay the outstanding liabilities and expenses of administration the duty of the administrator there ends, but if not, his power to dispose of real estate is equal to that granted him to dispose of personal property.

The language used in section 5583 is "that his estate, property and effects shall be administered and disposed of." "Disposed of," as defined by Bouvier, means "to alienate or direct the ownership of property as disposed by will." These words were used in this statute in their broad and generally accepted meaning, and are sufficiently apt and appropriate to cast descent.   When the legislature passed this section, it meant that, when any person shall be sentenced and imprisoned for life, his property shall immediately descend as if he were dead, and that an administrator shall be appointed, whose duty it shall be to administer the entire estate in the usual and ordinary way. If it were necessary to make this plainer, a reference to article 17 of the criminal code, where this section is found, will simplify it.   That entire article, exclusive of section 5583, is directed to the care and management of the property of persons sentenced and imprisoned in the penitentiary for a period less than life, and ample provisions are there made for such cases. Section 5583 adds nothing to these provisions, nor is it claimed by the court that it does ; so that, if this section be not susceptible of the construction we place

on it, then it is meaningless, and we find that we have a statute which makes ample provision for the care, custody and control of the property of one who is sentenced and imprisoned in the penitentiary for a period less than life, but no provision whatever for the care or management of the property of one who is sentenced and imprisoned for life. It is a cardinal principle in the interpretation of a statute that the entire statute or act must be construed together, and that each provision should be given full force and effect. The construction placed on section 5583 by the court in its opinion renders that section nugatory.

Nor does this section work a forfeiture in a case of sentence and imprisonment for life of one without heirs, as indicated by the court. A forfeiture not only divests one of his estate, but invests it either in the party injured, as recompense for the wrong which he alone, or the public together with himself, has suffered, or invests it in the public. Under this section of the statute, if the person sentenced and imprisoned has no heirs to take, then his estate *escheats* exactly as it would if he died naturally. One anticipating death by imprisonment for life may dispose of his property by will as effectually as one who anticipates death by natural causes.

The case of *Rachel Beard, Respondent, v. William J. Knox, Executor of William M. Beard, Appellant,* 5 Cal. 252, cited by the court in its opinion as an authority for its position, when examined will not bear the construction claimed for it. The statute in that state provides that "all property, acquired by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property." It is further provided that the husband shall have the entire control of the common property, with

Smith v. Becker.

absolute power to dispose of it, and upon the dissolution of the community, by death of either the husband or wife, one-half of the common property shall go to the survivor.   In the opinion the court said :

"The words 'with absolute power to dispose of' ought not to be extended to a disposition by devise. The husband and wife, during coverture, are jointly seized of the property, with a half interest remaining over to the wife, subject only to the husband's disposal during their joint lives.   This is a present, definite and certain interest, which becomes absolute at his death, so that a disposition by devise, which can only attach after the death of the testator, cannot affect it, for such a conveyance can only operate after death, upon the very happening of which the law of this state determines the estate, and the widow becomes seized of one-half of the property."

It is plain from this statute that it was only during the life of the husband and wife that the husband had absolute control and could dispose of the property. Our construction of section 5583 may seem harsh, and it may be subject to all the inconveniences and unpleasant things suggested by the court, but it is the plain and unmistakable meaning of the language used by the lawmakers, and we have nothing to do but to give it the interpretation intended by that department of government.   Therefore, upon the sentence and imprisonment in the penitentiary of one for life, his property at once descends.