Dobbs v. Lilley.

---

CHARLES M. DOBBS *et al., Appellees,* v. C. C. LILLEY, *Appellant.*

No. 17,455.

### SYLLABUS BY THE COURT.

FORECLOSURE—*Parties—Mortgagor in Penitentiary—Rights of Heirs.* The owner of land subject to a mortgage was convicted of crime, sentenced to the penitentiary and confined there the remainder of his natural life. After his incarceration and before his death the mortgage was foreclosed by proceedings regular in form which resulted in a sheriff's deed. The parties to the foreclosure proceeding were those who would have been made such had the mortgagor been naturally dead, including his children. After his death his children, who were his only heirs, sought to recover the land and to redeem from the mortgage. *Held,* the foreclosure proceedings and the sheriff's deed were valid under section 337 of the criminal code, providing that whenever a person shall be imprisoned under a sentence for life his estate, property and effects shall be administered and disposed of in all respects as if he were naturally dead.

33—86 KAN.

Appeal from Greenwood district court. Opinion filed February 10, 1912. Reversed.

*W. S. Marlin,* for the appellant.
*Lew E. Clogston,* for the appellees.

The opinion of the court was delivered by

BURCH, J.: In 1896 George H. Dobbs was the owner of the real estate in controversy, and in March of that year he mortgaged it to Wilder S. Metcalf to secure a loan of money. In January, 1898, Dobbs was convicted of murder in the second degree and sentenced to confinement in the penitentiary for the term of his natural life. No appeal was taken, the judgment was executed without clemency, and Dobbs was kept in confinement in the penitentiary until January 31, 1905, when he died. He left as his heirs his son, Charles M. Dobbs, aged eighteen, and his daughter, Lulu Dobbs, aged sixteen, since married to F. G. Bias, who were plaintiffs in the district court. While confined in the penitentiary Dobbs executed, in October, 1901, a mortgage of the land to the firm of Stowell & Nold, and in June, 1902, a deed to John Stowell. The Metcalf mortgage and the Stowell & Nold mortgage were assigned to Michael Worthy, who foreclosed them by proceedings, regular in form, resulting in January, 1904, in a sheriff's deed to C. C. Lilley, the defendant in the district court. The parties defendant in the foreclosure suit were John Stowell, William Knox, tenant of the land under Stowell, John W. Dobbs, as guardian of Charles M. and Lulu Dobbs, and Charles M. Dobbs and Lulu Dobbs. Charles M. Dobbs and Lulu Dobbs answered by a guardian *ad litem,* who pleaded original ownership of the land by George H. Dobbs, his conviction and his incarceration in the penitentiary. The Stowell & Nold mortgage and the deed to Stowell were attacked as invalid because made after the legal decease of George H. Dobbs. It was alleged that Charles

M. and Lulu Dobbs were the sole and only heirs at law of George H. Dobbs, and that by virtue of his conviction and imprisonment they were the legal and equitable owners of the land. The prayer was that they might be protected in their rights and ownership and might recover as seemed to the court to be equitable and just.

In April, 1908, some three years after the death of their father, the plaintiffs brought an action to recover possession of the land, to quiet title against the Stowell & Nold mortgage, the Stowell deed and the foreclosure proceedings, all of which, it was claimed, were void, and to redeem from the defendant, as a mortgagee in possession under the Metcalf mortgage. The court found in favor of the plaintiffs. An accounting was taken, which disclosed that the Metcalf mortgage, and interest, and taxes paid by the defendant, and interest, were more than offset by rents and profits and the value of improvements removed from the land by the defendant. Judgment was rendered accordingly, and the defendant appeals.

The plaintiffs claim under title derived by inheritance from their father consequent upon his natural death after the foreclosure proceedings had been concluded. Taking for granted what doubtless is true, that the mortgage to Stowell & Nold and the deed to Stowell were without legal effect, the question is whether the foreclosure proceedings, considered as resting upon the valid Metcalf mortgage, bar the plaintiffs' claim.

The statute provides that whenever a person shall be imprisoned under a sentence for life, his estate, property and effects shall be administered and disposed of in all respects as if he were naturally dead. (Crim. Code, § 337.) In the case of *Smith v. Becker,* 62 Kan. 541, 64 Pac. 70, it was held that under this statute the fact of sentence and imprisonment does not cast the descent of a convict's property upon his heirs. The plaintiffs

argue that Dobbs was vested with title to the land until he died; that the plaintiffs had and could obtain no title before the occurrence of that event; that they possessed nothing to defend in the foreclosure suit; that Dobbs could not be made a party, be served with process, defend the action or be bound by the foreclosure judgment, because of the extinction of his civil rights; that a landowner's title can not be transferred by a judicial sale unless he be a party to the proceeding; and that upon the natural death of Dobbs the estate he had all the time possessed, but had been incapacitated to enjoy, passed, unaffected by the sheriff's deed, to the plaintiffs.

. The foregoing argument assumes that the decision in the Smith-Becker case is conclusive upon the rights of the present litigants. The scope of the Smith-Becker decision is fairly indicated by the following extracts from the opinion:

"The turning-point is the construction to be placed on the words 'administered and disposed of.' Administration has relation to personal property, and it is only where the personalty is insufficient in value to pay the debts of the decedent that the administrator exercises any control over the real estate. It descends to the heirs *eo instanti* upon the death of the ancestor. We think that by the use of the word 'administered' in this provision relating to the estate of convicts it was the intention of the lawmakers to restrict the administrator to the control and disposition of personal property for the benefit of creditors, to the end that all debts of the convict might be speedily paid. The words 'disposed of' are not in our judgment broad and comprehensive enough to reach to and embrace that act of law which vests the ownership of property in an heir by inheritance. They can be more sensibly applied to affirmative action taken by a person, either natural or artificial. It is an inapt expression to say that when an estate is cast by descent on the heir by the death of the owner it has been *disposed of*. . . . In the present case the property in controversy is real estate, and there are no debts owing by the convict. If such estate has already devolved upon the heirs, an administrator

can do nothing which will affect the lands. As applied to this case, the use of the word 'administered' can have no force, for the estate in controversy can never come to the hands of an administrator." (pp. 542, 543.)

It will be observed that great care was taken to restrict this discussion to the specific facts presented by the record and to the precise question to be determined. The convict at his legal death left no creditors with unsatisfied debts, and the question was whether descent was cast by civil, as distinguished from natural, death. In this case the convict, upon his incarceration, left a creditor holding an unpaid debt secured by a mortgage on real estate belonging to the convict, and the question is not one of descent, but whether such real estate may be disposed of to satisfy the lien.

It is indeed true that statutes in derogation of the natural right to hold private property will not be enlarged by interpretation. (*Gray v. Stewart,* 70 Kan. 429, 78 Pac. 852.) But it does not detract from such right to provide that property may be applied to the very use to which the owner has pledged it. On the contrary, a statute having that end in view merely makes the right to private property more beneficial and effectual. Besides this, concomitant with the right of private property in English and American law, is the right of creditors to satisfaction of their debts through speedy and efficient remedies. That right is also a private property right, and it would be surprising indeed to discover that punishment of a malefactor includes a virtual confiscation of the claims of his innocent creditors upon his property. A statute having that outrageous effect would be contrary to the whole policy of our law. Under these circumstances we find, as we should expect to find, that in case of imprisonment for a term of years less than life elaborate provision is made for the appropriation of the convict's property to the payment of his debts. (Crim. Code, §§ 338-360.) The particular statute under consideration provides for

administration upon the personal estate, so that, as the court said in the Smith-Becker case, the debts of the convict may be speedily paid. Disposition of property to that end is expressly recognized. Since the convict can not use or enjoy his property, and since it does not descend to his heirs, the statute is essentially one for the benefit of creditors, and no intimation of an intention to discriminate between those who have real estate security and others is discoverable. *In all respects* the estate, property and effects of the convict shall be administered and shall be disposed of as if he were naturally dead. (Crim. Code, § 337.)

What procedure, therefore, is open to a creditor whose debt is secured by a mortgage on the debtor's land when the debtor dies a natural death? The answer is obvious. He may foreclose his mortgage, making those persons parties to the suit who, because of the landowner's death, became interested in the matter. Michael Worthy's suit illustrates the legislative intention. Although title still resided with Dobbs and had not descended to his heirs, such title was inert and dormant, and his power over it was utterly defunct. For all purposes of the suit, he was classified with the dead, and not with living owners having the right to a day in court. Those persons who upon his death would be his heirs were the only persons who had or could have an interest in the land and in the proceeding adverse to the mortgagee. Although it was inchoate and contingent, they did have a real and substantial interest, which authorized them to defend at large as fully as they might have done had Dobbs been dead in fact. They were made parties, and by virtue of the statute and jurisdiction over them the court was authorized to decree a sale which passed title.

It is argued that Worthy was limited to proceedings in the probate court for the collection of his debt. Since, however, under the facts as they existed at the time, the remedy by foreclosure would have been avail-

able had Dobbs been naturally dead, Worthy was entitled to pursue it and secure a disposition of the mortgaged property by the district court for the payment of his debt.

It is easy to imagine that unusual situations may arise in consequence of the statute, but it deals with unusual conditions produced by abnormal conduct. As applied to the facts of the present case, the letter and the spirit are both clear and easy to carry into effect, and the solution of complications may be deferred until they arise.

The sheriff's deed being valid, the judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.