No. 21,131.

ROBERT C. POSTLETHWAITE, as Administrator, etc., *Appellee*,
v. FRANK P. EDSON and JESSIE L. McCABE, *Appellants*.

### SYLLABUS BY THE COURT.

1. CONSTRUCTION OF WILL—*Life Estate—Remainder to Children.* The
former opinion (*Postlethwaite v. Edson*, 98 Kan. 444, 155 Pac. 802)
remains as the deliberate holding of this court.

2. SAME — *Judgment against Testator — Homestead — Land Subject to
Payment of Testator's Debts.* A husband and wife mutually willed
their property, including a homestead, to their survivor for life with
power of disposal, remainder to their children. It was occupied by the
devisors, and by the surviving wife until her decease, the children
then having homes elsewhere and not occupying the land devised. A
judgment obtained against the father was kept alive as to his estate
by revivor against his administratrix. *Held*, that the children took
the land freed from its homestead character, and it could by this suit
be subjected to the payment of the judgment.

3. SAME. The homestead character of real estate depends on family
occupancy—not on the source of title.

4. SAME—*Judgment Lien—Interest of Judgment Debtor in Land.* Only
the interest of the judgment debtor could be appropriated, and it was
error to sustain a demurrer to that part of the amended answer set-
ting up that the homestead was acquired by the joint efforts and
money of the husband and wife, and held by them as tenants in
common.

5. SAME—*Unambiguous Will—How Construed.* The will not being am-
biguous the trial court correctly refused evidence explanatory of the
devisor's intentions, and properly struck from the answer allegations
of what such intentions were.

6. WILL—*Not Alienation of Homestead.* The will was not an alienation
or conveyance of the homestead.

Appeal from Shawnee district court, division No. 2; GEORGE
H. WHITCOMB, judge. Opinion filed December 8, 1917. Modi-
fied.

*Eugene S. Quinton*, of Topeka, for the appellants.

*T. F. Garver*, and *R. D. Garver*, both of Topeka, for the
appellee.

The opinion of the court was delivered by

WEST, J.: When this case was here before, it was stated in
the brief of the plaintiff: "Defendants do not claim any

homestead rights." (p. 10.)   In the defendants' brief were the following statements:

"The appellants claim that the instrument is a joint will by which Mary Edson took a life estate with a remainder to Frank P. Edson and Jessie L. McCabe, and if so the property is subject to be taken in this action.

.    .    .    .    .    .    .    .    .    .    .    .    .

"It is admitted that Frank P. Edson and Jessie L. McCabe  .  .  . had never resided upon or occupied this property as a homestead for a long time prior to all matters herein presented.

.    .    .    .    .    .    .    .    .    .

"If the absolute fee simple title and homestead right did pass, under this mutual will, upon the death of Willis Edson to Mary Edson, the survivor, then it must follow that Frank P. Edson and Jessie L. McCabe inherited that legal title and the property directly and fully and completely, from Mary Edson, against whom there were no claims or debts. From the death of Willis Edson to the death of Mary Edson, this property, as a homestead, remained clear and free from the claims of any creditors or either of them.  If so, then the legal title to this homestead having vested upon the death of Willis Edson in Mary Edson, that too must have remained clear and free, with the homestead right, from the claims of creditors, there being no claims or debts of Mary Edson at her death.  The same unincumbered title and property must of necessity have passed unincumbered to the heirs, Frank P. Edson and Jessie L. McCabe.  This conclusion is inevitable, if, as a matter of law the legal title to this homestead, by virtue of this mutual will, passed unincumbered to Mary Edson.

.    .    .    .    .    .    .    .    .    .    .    .

"So, in this case, under the mutual will, the homestead and legal title thereto vested in the survivor clear and free from the debts of the deceased husband.  Having once, then, vested free from debts in an innocent party or purchaser, it could not be divested." (pp. 6, 9, 12, 17.)

These quotations are made to demonstrate that the controversy when first here centered on the question whether the survivor took a fee or a life estate with power of disposal, remainder to the children, and that it was then insisted that if the former, the homestead character of the land remained even when inherited by the children, who did not claim to occupy it as a homestead.  Hence in the opinion (*Postlethwaite v. Edson,* 98 Kan. 444, 155 Pac. 802) it was said:

"Mary Edson survived her husband, remaining in possession of the homestead during her life.  She left the defendants as her sole heirs who claim no homestead rights.  The plaintiff takes the position that the will devised a life estate to Mary Edson with full power of disposition,

remainder to the defendants, and if this be the proper construction it is conceded that the property is subject to be taken in this action." (p. 445.)

In the elaborate petition for a rehearing there was no complaint of this statement.

Near the close of the opinion it was said:

"It is fairly clear that the intention was that the survivor should have complete dominion over the estate during her life, including the full power of disposition, but that as she would be likely to retain the estate or portion thereof such portion was to vest personally in the children to take effect at her death, that is, the present estate in such portion was to vest in her for life with the power of disposition, remainder to the children." (p. 451.)

This conclusion, reached after a painstaking examination and consideration, we are satisfied with and it must remain as the deliberate holding of this court.

The case was first here on appeal from an order overruling a demurrer to the answer. When it reached the lower court the defendants amended their answer, parts of which were stricken out on motion of the plaintiff and a demurrer to the remainder was sustained, from which orders this appeal is taken. Hence, the question now before us is the claimed error in such ruling. The parts stricken out amounted to an allegation that the Edsons talked over the making of the will and expressed their intentions and desires, counseled with an experienced lawyer who drew the instrument and suggested a certain addition with which the testators were pleased. In other words, the trial court refused to permit the defendants to go into the conversations and intentions of the makers of the will, on the theory doubtless that it is plain on its face and needs no extrinsic aid for its proper construction. The remainder of the amended answer pleaded the homestead character of the land devised while occupied by the parents or their survivors, the separate homes elsewhere occupied by the defendants, that the homestead was procured by the joint efforts of the devisors and held by them as tenants in common.

Error is assigned on sustaining a demurrer to all of the remaining answer except the general denial, because the judgment of the plaintiff was never a lien on this property; because the judgment was not against Mary Edson, the joint owner with her husband of the homestead; because the will is

ambiguous and susceptible to explanation of the intention of its makers, and because it carried a fee to their survivor. The last reason is disposed of by the former decision. The first may be conceded, this suit being brought for the very purpose of subjecting the land to the payment of the plaintiff's judgment, which would be idle if it were already a lien thereon. This leaves only the second and third for consideration—the effect of the alleged one-half or joint ownership by Mrs. Edson, and the claimed ambiguity of the will.

A "partial transcript" before us contains the following:

(Counsel for plaintiff): "It is admitted that the title of record to the lots described in the petition was in Willis Edson at the time of his death and at that time and some time previous said premises had been occupied by Willis Edson and his wife as their residence and homestead.

(Counsel for defendants): "That is all right.

(Mr. G.): "It is further admitted Mary Edson elected to take under the will as probated, and thereafter, in April, 1914, died without having made any other disposition of said property.

(Mr. Q.): "That last statement in there I want taken out, 'without having made any other disposition of her property.'

(Mr. G.): "I offer in evidence the original answer filed in this case by the defendants, which states some of these facts.

"I offer the inventory filed in the probate court by Mary Edson as administratrix of the estate of Willis Edson, deceased.

(Mr. Q.): "I object to it as incompetent, irrelevant and immaterial and not the best evidence.

(The Court): "Overruled.

.     .     .     .     .     .     .     .     .     .     .

"The inventory in question is in substance as follows, to wit:

"I, Mary Edson, residing at Topeka, Kansas, administrator of the estate of Willis Edson, deceased, do hereby make and return upon oath the following inventory of all the moneys of the deceased which are by law to be administered and which has come into my possession or knowledge and also of all the real estate of the deceased. I further declare upon oath that the estate of said deceased consists only of the property herein scheduled and listed, to wit:  Except household goods exempt under the law.

.     .     .     .     .     .     .     .     .     .     .

"Lots 246 and 248 Eighth avenue, Topeka, Shawnee County, Kansas, $3,750."

But aside from all this, and conceding for the moment only that the property was acquired and owned by the parents as alleged, it was still the subject of their testamentary direction, and as already construed their mutual will gave to the sur-

vivors a life estate with power of disposal, remainder to the children. True, while the homestead of the devisors or their survivor, it was property towards which the eye of their creditors could be turned in vain, but had it ceased to be such homestead by abandonment it would thereby have become like any other property they may have owned, subject to their debts. While they could not have defrauded their creditors by selling to a stranger, this is because while still occupied by them it was exempt. Again, had the survivor died leaving the children in possession as part of her family, it would still have been exempt, not only from the debts of the devisors, but from the debts of the children so long as they might rightfully continue to occupy the property as their homestead. The entire theory of homestead exemption is the setting apart of real estate free from the claims of creditors, not the giving to any family or heirs the right to have a homestead and claim also as exempt other real estate because inherited from or devised by those whose homestead it was.

It has been held that when a husband with his own money purchases land in his wife's name for the purpose of placing it beyond the reach of his creditors and then makes improvements thereon and occupies it with his family as a homestead, such transactions are not fraudulent as to subsequent creditors of the husband. And that in such case it makes no difference whether the husband or wife owned the money or in whose name (of the two) the title was taken. *Hixon v. George,* 18 Kan. 253. In *Ashton v. Ingle,* 20 Kan. 670, it was decided that a judgment against an owner of nonexempt real estate attaches thereto although at the time of the levy it may be occupied as the homestead of the owner. In *Dayton v. Donart,* 22 Kan. 256, an owner of a homestead died intestate leaving many debts and no personal property with which to pay them, and no other real estate. It was held that the title descended to the widow and children just the same as if it were not occupied as a homestead,

"except that it descends to them subject to a certain homestead interest vested in the widow and such of the children as occupy the homestead at the time of the intestate's death." (Syl. ¶ 1.)

That if the property be sold while still occupied as a homestead by the widow and one or more of the children the title

passes to the purchaser free from debts, although the property may afterwards be abandoned as a homestead by the widow and children. In the opinion it was said:

"But evidently from the statutes they hold the property as their absolute property, free from debts and division only while some of them occupy the same as their homestead. If they all abandon the property as a homestead, it then becomes subject to debts and division the same as though it never was a homestead. This homestead right is probably just like any other homestead-exemption right, except that it is held by the occupants (prior to the widow's marriage, and prior to all the children's reaching their majority) free from division or partition, as well as free from debts; and when it is abandoned as a homestead (if not previously sold), it becomes liable for the intestate's debts." (p. 270.)

*Stratton, Adm'r, v. McCandliss,* 32 Kan. 512, 4 Pac. 1018, was to the effect that a homestead left by the husband and occupied by the widow as a homestead until her decease was thereupon subject to sale for the payment of the owner's debts. In another case the homestead owner died leaving a widow and several children all of whom had reached majority. He had devised one-half to the widow and one-quarter to the son who resided upon the homestead until partition by which the widow was allotted one-half the homestead, the son one-quarter and the remaining one-quarter set off to the other heirs. The widow sold her portion and abandoned the homestead. The heirs to whom the one-quarter was awarded never resided upon the homestead and after the abandonment by the widow their one-quarter was unsold and unoccupied. The personal property left by the deceased was insufficient to pay the debts of the estate, and it was held that the one-quarter last mentioned was subject to sale for the payment of debts and cost of administration. (*Barbe v. Hyatt,* 50 Kan. 86, 31 Pac. 694.) In the opinion it was said:

"It has been settled that the death of the owner of the homestead does not transfer the title absolutely and unconditionally to the widow and children. It descends to them the same as other real estate owned by the deceased, except that it is subject to the homestead interests. So long as it retains its homestead character it cannot be sold to pay ordinary debts, nor can there be a compulsory division and distribution. While it is so occupied it may be conveyed by the persons in whom the homestead interests vest, and the title to the property or any interest therein will pass free from any liability for the ordinary debts of the estate. Abandonment by them, however, will destroy the homestead interest, and when it is abandoned it becomes subject to the debts of the

estate, the same as other lands which were never impressed with the homestead character." (p. 89.)

In *Allen v. Holtzman,* 63 Kan. 40, 64 Pac. 966, the husband died leaving a will devising the property to the wife, who elected to take thereunder and mortgaged the land while occupying it with her children, to secure a personal debt, and it was held that such mortgage was a valid incumbrance. It was said in the opinion:

"After the husband's death and the election of the wife to take under the will, she took the whole estate. The children got none. Their homestead rights in the land were no greater after the death of their father than before." (p. 41.)

In *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, the widow who continued to occupy the homestead after the death of her husband was held to be entitled to so occupy the land free from forced sale for the payment of the husband's debts, and to so do after electing to take under his will devising the homestead to her. When a wife after the death of her husband occupies the homestead alone it is exempt as to her own creditors, as well as those of her husband's estate, regardless of which spouse held the legal title. (*Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273.)

It is insisted that the land cannot be appropriated to the payment of the judgment because the latter has not been revived against the defendants. It was revived against Mary Edson, as administratrix, July 8, 1912. She died April 4, 1914, and this suit was begun May 4, 1914. Whatever estate Willis Edson left was, unless exempt, subject to appropriation for the payment of his debts. Mary Edson by his will took the property devised to her thus burdened, unless exempt, and thus subject when such exemption should cease. By the same mutual will the property passed to the children and would have continued exempt from the debts of Willis Edson had it been and continued to be the children's homestead. But as they did not occupy it they took it subject to the debts of their father, the judgment against his estate having been kept alive. The judgment, if not a lien on the land, could be made one because the homestead shield had been lowered by the cessation of homestead occupancy. Had they by the will taken other land on which no claim of homestead could have been made

they would, of course, have taken it burdened with liability to appropriation for the payment of his debts. Having taken this land, to which no homestead claim could longer be made, they took it also thus burdened.

But it is urged that this could at most be true only as to such interest as Willis Edson actually owned, and that if he owned but a half interest this is all that could be appropriated; hence, the importance of permitting the defendants to show such half ownership only. It is true that only the actual interest owned by the judgment debtor could be reached. (*Hixon v. George,* 18 Kan. 253; *Holden v. Garrett,* 23 Kan. 98; *Mc-Calla v. Knight,* 77 Kan. 770, 94 Pac. 126; *Emery v. Bank,* 97 Kan. 231, syl. ¶ 3, 155 Pac. 34.)

While it is vigorously asserted, and as vehemently denied, that evidence as to ownership was received under the general denial, the supplemental abstract contains the statement that none was introduced. The defendants had a right to show if they could that their father owned only one-half the land, for in that event their loss by its appropriation to the payment of his debt would be cut in two.

It was error, therefore, to sustain the demurrer to this part of the amended answer.

But it is insisted that Willis Edson could have deeded the property, freed from its homestead character, and by his will he accomplished the same thing, and, therefore, vested the title in his wife freed from the claims of his creditors; and that the children also took the property thus freed. As counsel says in his brief—

"If the fee title passed to the children and a life estate only to the wife, it still was a 'disposition' of the property while occupied as a homestead, that transferred the fee to the same free from debts of creditors."

In his reply brief he asserts that—

"The homestead may be transferred to the children by a will, free ·from debt, the same as it may be made a gift to a stranger."

In *Dayton v. Donart,* 22 Kan. 256, it was said:

"They say that the first moment of *bona fide* occupancy by the widow and children so fixed the title in the occupants that no subsequent abandonment by them would have the effect to expose the property to liability for the payment of Church's debts. Now, if mere occupancy alone for any period of time, long or short, could have the effect to so free the land from liability for Church's debts that no subsequent abandonment

of the premises would expose them to such liability, we should think that under the statutes a moment's time would be just as good as any longer period of time. But in our opinion no period of time, however long, is sufficient to give absolute title, free from debts, if the debts remain unpaid and not barred by the statute of limitations." (p. 268.)

In *Comstock v. Adams,* 23 Kan. 513, the court had under consideration section 8 of the descents and distributions act providing that one-half in value of the husband's estate of which the wife had made no conveyance shall be set apart, etc.

It was argued that the term conveyance should be given its broad and general sense, so as to include the conveyance of the property by will, but the court said:

"The word 'conveyance', as used in the proviso of said section 8, clearly does not include a will. A will is never a conveyance. A conveyance operates in the lifetime of the grantor, while a will does not operate until after the death of the maker. Of course, death transfers all property, and a will says where it shall go; but this does not render a will 'a conveyance,' 'which the husband has made.' It is the death that transfers the property." (p. 524.)

In *Martindale v. Smith,* 31 Kan. 270, it was held that a husband could make a valid will giving a homestead to his wife, and that as against an heir who did not occupy the property as a homestead it would take effect immediately after the death of the testator and after the probate of the will, although the will stated that the testator devised the property to his wife, after paying all his legal debts. In the opinion it was said:

"When death occurs, the title to the property of the person dying must be transferred to some person. It cannot remain in the deceased; and the will simply designates where the title shall go." (p. 273.)

The claim of counsel that the will could not take effect until the payment of the debts was thus disposed of:

"As against George Waybright, the heir and his grantees, we think the will took effect immediately after the death of the testator and the probate of the will, and such death and will immediately transferred the title to the property to the testator's wife, subject possibly to the payment of the debts of the deceased, and subject possibly to his wife's homestead interests." (p. 274.)

· The language last quoted leaves the question now before us quite open.

In *Vining v. Willis,* 40 Kan. 609, 20 Pac. 232, a husband and wife occupied the homestead owned by her, the title being in

Postlethwaite v. Edson.

her name, she having no children, and it was held that she could by will, without her husband's consent, devise a one-half interest to a third person, so that after her death such third person could take such interest. It was argued that the will amounted to an alienation of the estate, which could only be accomplished by the joint consent of the husband and wife.

"We think these views are utterly untenable. A will never *divests* the owner of his property or of any interest therein. No interest passes by the will to the intended devisee; nothing that he can sell, or transfer, or incumber; nothing that will pass from him to heirs or that he can devise or bequeath; and the will may be revoked by the testator immediately after its execution or at any time afterward and before his death. A person might execute a thousand wills for the same property, yet no one of such wills would *transfer* anything; but when the testator should die the devisee mentioned in the last will executed would, under and *by virtue of the statutes*, take the property. It would not be the will, however, but death that would take the property *from* the testator; and it would be death, the statutes, and the will, all operating together, that would *confer* the property upon the devisee." (p. 611.)

Section 8262 of the General Statutes of 1915 provides that in case any person be imprisoned for life his estate shall be disposed of as if he were naturally dead.

In *Smith v. Becker*, 62 Kan. 541, the meaning of the words "disposed of" were construed and it was said:

"The words 'disposed of' are not in our judgment broad and comprehensive enough to reach to and embrace that act of the law which vests the ownership of property in an heir by inheritance. . . . It is an inapt expression to say that when an estate is cast by descent on the heir by the death of the owner it has been *disposed of*." (pp. 542, 543.)

A California decision was cited to the effect that a statute giving the husband absolute power to dispose of community property ought not be extended to a disposition by devise.

The fourth section of the syllabus in *Cross v. Benson*, 68 Kan. 495, 75 Pac. 558, reads as follows:

"Upon the death of her husband a wife may elect to take title under his will to their homestead, which she continues to occupy, without subjecting it to the payment of his debts." (Syl. ¶ 4.)

It was argued that taking under the will necessarily implied taking subject to the debts of the testator, in view of the statute authorizing one to devise his lands subject to the rights of creditors, but it was held that by the will the title was

8—102 Kan.

devised, and she elected to take thereunder; there was no hiatus in her occupation of the premises as a residence and the homestead privilege was not disturbed, any more than it would have been had her husband deeded the lots to her' in his lifetime, while she was occupying them as a homestead.

"And since the lots in question were continually impressed with the homestead interest of Sue S. Cross in the lifetime of her husband, at the date of his death and during the following years until her own demise, creditors enjoyed no rights to which such lots were subject or to which the making ·of a will of them was subject." (p. 506.)

In *Compton v. Gas Co.,* 75 Kan. 572, 89 Pac. 1039, holding that the widow owning an undivided half of the homestead may lease her interest subject to the rights of those occupying the premises as a homestead, it was said:

"As was held in *Gatton v. Tolley,* 22 Kan. 678, such sale or alienation is always subject to the right of the heirs to continue to occupy the premises as a homestead until the widow marries, the youngest child becomes of age or the homestead is abandoned." (p. 575.)

In a note to this decision found in 10 L. R. A., n. s., 787, may be found numerous authorities more or less in point, but, like other decisions from other states, they are so dependent on local statutes as to be of little, if any, assistance.

See *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273, already referred to. From these citations it is manifest that there is evolved the settled rule that a will is not a conveyance, and does not effect an alienation of real estate, and is not a disposal of it in the ordinary sense of the term. When, therefore, the widow took under the will, she took subject to the husband's debts, in case they should be kept alive and occupancy as a homestead should cease. When the children took by virtue of the same will, their title was not expanded, increased or enlarged over that which the widow acquired on the death of her husband. While if they had been in occupancy as a homestead, it would have continued free from their father's debts, it was only free while such occupancy should continue and no longer.

As to the claim of ambiguity and the consequent propriety of showing the real intent of the devisors, it must be observed that while, as stated in the former opinion, support could be found for a different legal conclusion touching the meaning of the will as drawn, the document is not ambiguous but clearly

within the rule of construction already announced, and hence there was no call and no room for evidence explanatory of intention. (*Smith v. Holden,* 58 Kan. 535, 50 Pac. 447; *Holmes v. Campbell College,* 87 Kan. 597, 125 Pac. 25; *Morse v. Henlon,* 97 Kan. 399, 155 Pac. 800.)

The judgment is modified as to the sustaining of the demurrer, and the cause is remanded for further proceedings in accordance herewith.